# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>NUTELLA MARKETING AND SALES<br>PRACTICES LITIGATION | Civil Action No. 11-1086(FLW)(DEA) |

------------------------------------------------------------------------------------------------------------

## PLAINTIFFS' BRIEF IN SUPPORT OF FINAL
## APPROVAL OF PROPOSED CLASS SETTLEMENT

------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Christopher M. Burke
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
(619) 233-4565

Joseph P. Guglielmo
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
(212) 223-6444

*Counsel for Plaintiffs and Class Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

   A.   Factual and Procedural History ..................................................................... 3

   B.   Terms of the Settlement ................................................................................. 6

   C.   Preliminary Approval and Notice to the Class .............................................. 8

LEGAL ARGUMENT ............................................................................................... 10

   A.   Standard of Review for Final Settlement Approval and Class Certification for
       Settlement Purposes .................................................................................... 10

   B.   Class Certification Should Be Granted for Settlement Purposes Under Rule 23 ............ 11

       1.   The Rule 23(a) Factors Are Met ....................................................... 12

       2.   The Rule 23(b)(3) Factors Are Met ................................................... 16

   C.   The Proposed Settlement Is Fair, Reasonable and Adequate, Meriting Final Court
       Approval Under the *Girsh* Factors ............................................................ 19

       1.   Complexity, Expense, and Likely Duration of the Litigation ................... 20

       2.   The Reaction of the Class to the Settlement ...................................... 21

       3.   The Stage of Proceedings and the Amount of Discovery Completed ......... 22

       4.   Risks of Establishing Liability ........................................................ 23

       5.   Risks of Establishing Damages ....................................................... 24

       6.   Risks of Maintaining Class Action Status Through Trial ...................... 24

       7.   Ability to Withstand Greater Judgment ............................................ 26

       8.   The Range of Reasonableness of the Settlement Fund in Light of the Best
           Possible Recovery and All the Attendant Risks of Litigation ................... 26

   D.   The Notice Program Satisfies Rule 23 and Due Process and Has Been Fully
       Implemented ............................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).................................................................. *passim*

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009).....................................................................23

*Baby Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) ...............................................................12

*Barnes v. Am. Tobacco, Inc.,*
161 F.3d 127 (3d Cir. 1998)............................................................14

*Bell Atl. Corp. v. Bolger,*
2 F.3d 1304 (3d Cir. 1993)........................................................21, 22

*Carnegie v. Household Intern., Inc.,*
376 F.3d 656 (7th Cir. 2004) ..........................................................25

*Danvers Motor Co. v. Ford Motor Co.,*
543 F.3d 141 (3d Cir. 2008)............................................................18

*District 1199P Health and Welfare Plan v. Janssen, L.P.,*
No. 06-3044 (FLW), 2008 WL 5413105 (D.N.J. Dec. 23, 2008).........................23

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975)............................................................24

*Hilao v. Estate of Marcos,*
103 F.3d 767 (9th Cir. 1996)...........................................................25

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
263 F.R.D. 226 (E.D. Pa. 2009)...........................................13, 14, 17, 26

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)........................................20, 22, 24, 26

*In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.,*
269 F.R.D. 468 (E.D. Pa 2010)........................................................21

*In re Cmty. Bank of N. Virginia,*
418 F.3d 277 (3d Cir. 2005).......................................................... *passim*

*In re Epogen and Aranesp Off-Label Mktg. and Sales Pract. Litig.*,
No. MDL 08-1934 PSG, 2009 WL 1703285 (C.D. Cal. June 17, 2009)................................23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)................................................................... *passim*

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)...............................................................24

*In re Insurance Brokerage Antitrust Litig.*,
MDL No. 1663, 2012 WL 1071240 (D.N.J. Mar. 30, 2012)...........................................28, 30

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
MDL No. 2103, 2011 WL 5599129 (N.D. Ill. Nov. 16, 2011)...............................30

*In re LifeUSA Holding Inc.*,
242 F.3d 136 (3d Cir. 2001)...............................................................25

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010).........................................................13, 15, 17

*In re Phillips/Magnavox Television Litig*,
Civil Action No. 09-3072 (CCC), 2012 WL 1677244 (D.N.J. May 14, 2012) ...............17, 19

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
177 F.R.D. 216 (D.N.J. 1997).........................................................29

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998)................................................................. *passim*

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)...............................12, 22

*In re Sch. Asbestos Litig.*,
921 F.2d 1330 (3d Cir. 1990)...............................................................10

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004)...........................24

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)................................................................. *passim*

*Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*,
585 F. Supp. 2d 1339 (M.D. Fla. 2008)...............................................................23

*Johnston v. HBO Film Mgmt., Inc.*,
265 F.3d 178 (3d Cir. 2001)...............................................................14, 15

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ...........................................................................25

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................................28

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ...........................................................................14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ......................................................................................28

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ...........................................................................12

*Stoetzner v. U. S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ...........................................................................22

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...........................................................................16

*Weber v. Government Employees Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ...............................................................12, 14, 17

*Weiss v. Mercedes-Benz of North America, Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995) .................................................................22, 23

## STATUTES, RULES & REGULATIONS

United States Codes
    28 U.S.C. §1407 ..........................................................................................3, 4

New Jersey State Statutes
    J.S.A. §§56:8–1, *et seq* ........................................................................ *passim*

Federal Rules of Civil Procedure

Rule 23 ............................................................................................................... *passim*

Rule 23(a) ........................................................................................................... *passim*

Rule 23(a)(2) ............................................................................................................ 12

Rule 23(a)(3) ............................................................................................................ 14

Rule 23(b) ........................................................................................................... 10, 11

Rule 23(b)(3) ...................................................................................................... *passim*

Rule 30(b)(6) ......................................................................................................... 5, 6

Rule 23(c)(2)(B) ....................................................................................................... 29

Rule 23(c)(2)(B)(i)-(vii) .......................................................................................... 29

Rule 23(c)(3) ........................................................................................................... 28

Rule 23(e) ................................................................................................... 10, 19, 29

Rule 23(e)(1) ........................................................................................................... 29

Rule 23(f) .......................................................................................................... 21, 25

## PRELIMINARY STATEMENT

Plaintiffs Marnie Glover and Jayme Kaczmarek ("Plaintiffs") hereby move pursuant to Fed. R. Civ. P. 23 for final approval of the Class Action Settlement Agreement ("Settlement") (attached as Exhibit 1 to the Declaration of James E. Cecchi in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement (ECF No. 62-3)) entered into with Defendant Ferrero U.S.A., Inc. ("Ferrero" or "Defendant") in the above matter.  The Settlement resolves the claims alleged in the complaints and includes all persons throughout the United States who purchased one or more of Defendant's Nutella brand hazelnut spread products ("Nutella") in any state other than California,[1] at any time from January 1, 2008 through the date of Preliminary Approval ("Class Period"), other than for resale or distribution (the "Class" or "Settlement Class Members").[2]  Settlement at ¶21.GG.  As is more fully set forth herein, the Settlement, which this Court preliminarily approved on February 3, 2012 (ECF No. 67), satisfies Rule 23 and is fair, reasonable and adequate, and therefore, should be granted final approval.

This action challenges what Plaintiffs contend is the consistent deceptive marketing Ferrero has broadcast to the public – that Nutella is a healthy "hazelnut spread," like peanut butter, and a good breakfast food, especially for children.  ECF No. 1, ¶8.  As part of its false advertising campaign, Plaintiffs allege Ferrero advertises to consumers that Nutella is wholesome and made with simple, quality ingredients, and that Nutella contributes to a balanced breakfast.  *Id*., ¶9.  In reality, however, Nutella is more like a dessert topping than a healthy breakfast spread.  According to Plaintiffs, Nutella contains high levels of saturated fat, the

---

[1]    As the Court is aware, there is separate litigation involving California consumers pending in the United States District Court for the Southern District of California.  That litigation is being settled separately before Judge Huff of the Southern District of California, but the two settlements will be jointly administered.

[2]    All capitalized terms are defined in the Settlement and have the same meaning herein.

consumption of which has been shown to cause heart disease and other serious health problems; and contains over 55% processed sugar, the consumption of which has been shown to cause type 2 diabetes and other serious health problems. *Id.*, ¶21. Indeed, Plaintiffs allege the nutritional value claimed, if any, is not derived from Nutella, but from other foods or drinks (*e.g.,* whole grain breads, fruit and milk) that are advertised to be consumed along with Nutella. *Id.* In sum, Nutella is not healthy, and it is not appropriate to feed children for breakfast, contrary to Ferrero's claims

The Settlement has two components. First, the Settlement establishes a $2.5 million settlement fund for the benefit of Settlement Class Members who submit a simple Claim Form. Settlement Class Members with a valid Claim Form can receive up to $4 for each jar of Nutella purchased during the Class Period, up to a total of $20. Settlement at ¶48. Second, the Settlement also provides significant injunctive relief in the form of future prohibitions on the advertising at issue and a revised and corrective advertising campaign. *Id.* at ¶¶39-42. Plaintiffs' expert, Peter L. Wright, opines that Ferrero's new labeling and advertising campaign specifically remedies Ferrero's previous portrayal of Nutella hazelnut spread as a healthy and nutritious breakfast food, which Plaintiffs allege was deceptive. *See* Declaration of Peter L. Wright ("Wright Decl."). In light of the benefits achieved, Plaintiffs believe that the Settlement provides an excellent recovery for Settlement Class Members and falls within the range of reasonableness such that final approval is warranted. Accordingly, Plaintiffs seek entry of an Order in the form submitted herewith.

## FACTUAL BACKGROUND

**A.      Factual and Procedural History**

On February 27, 2011, Plaintiff Marnie Glover filed an action in the United States

District Court for the District of New Jersey, *Glover v. Ferrero USA, Inc*., Civil Action No. 11-

1086(FLW)(DEA), bringing claims on behalf of a nationwide class under the New Jersey

Consumer Fraud Act ("NJCFA"), N.J.S.A. §§56:8–1, *et seq*., breach of contract and breach of

express and implied warranty (the "Complaint").[3]   The Complaint alleges Defendant deceptively

markets, advertises, and sells Nutella as a "healthy" and "nutritious" food, but omits that the

nutritional value claimed, if any, is not derived from Nutella, but is instead from the other foods

or drinks (*e.g*., whole grain breads, fruit, and milk) that are advertised to be consumed along with

Nutella.   ECF No. 1, ¶¶8-10.   The Complaint further alleges that Ferrero made such

representations in print, television, and point-of-sale advertising, as well as on the label of the

product to Plaintiffs and other consumers during the Class Period.  *Id*.

On April 11, 2011, Plaintiff Glover filed a motion with the Judicial Panel on Multidistrict

Litigation ("JPML") requesting centralization of this action and a putative class action pending

in California alleging similar claims, *In re Ferrero Litigation*, No. 3:11-cv-00205(H) (S.D. Cal.)

("*In re Ferrero*"), under 28 U.S.C. §1407 for pre-trial proceedings in this District, where Ferrero

is headquartered and where it conducted the majority of the activities complained of in the

actions.  MDL No. 2248, ECF No. 1.  Following oral argument held on July 28, 2011, the JPML

denied Plaintiff Glover's motion for centralization, finding that, while the actions shared

---

[3]      Plaintiffs also refer the Court to the Declaration of James E. Cecchi in Support of Final
Approval of Proposed Class Settlement and in Support of Application for Award of Attorneys'
Fees, Reimbursement of Expenses and Approval of Incentive Awards ("Cecchi Decl.") in
support of the facts, procedural history and settlement terms discussed herein.

common factual questions, the questions are not sufficiently complex or numerous to justify §1407 transfer.  MDL No. 2248, ECF No. 28.

In the interim, on May 2, 2011, the plaintiffs in *In re Ferrero* ("Proposed Intervenors") sought to intervene in *Glover* for the purposes of having it dismissed.  ECF No. 21.  Plaintiff Glover opposed the motion to intervene on May 23, 2011.  ECF Nos. 30-31.  On May 9, 2011, Ferrero filed a motion to dismiss the Complaint (ECF No. 24), which Plaintiff Glover opposed on June 6, 2011.  ECF No. 35.  On July 26, 2011, Plaintiff Jayme Kaczmarek filed her complaint, *Kaczmarek v. Ferrero USA, Inc.*, Civil Action No. 11-4353(FLW), asserting claims on behalf of a nationwide class for violations of the NJCFA, breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation, and for injunctive and declaratory relief.  On August 23, 2011, Plaintiff Kaczmarek sought consolidation of *Kaczmarek* with *Glover* and appointment of Scott+Scott LLP ("Scott+Scott") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello ("Carella, Byrne") as interim lead counsel.  No. 11-4353, ECF No. 3.  On September 6, 2011, the Court entered an order consolidating the *Glover* and *Kaczmarek* actions under the caption *In re Nutella Marketing and Sales Practices Litigation*, and appointed Scott+Scott and Carella, Byrne as interim lead counsel ("Class Counsel") for the putative class.  ECF No. 41.  Thereafter, Plaintiffs informed Defendant and the Court of their intent to file a Consolidated Amended Complaint and, as a result, the Court terminated Ferrero's pending motion to dismiss, providing Ferrero leave to renew its motion to dismiss after Plaintiffs file their Consolidated Amended Complaint (which has been postponed pending settlement negotiations).  ECF Nos. 41, 58.

On September 9, 2011, Proposed Intervenors filed a second motion to intervene for the purpose of filing a motion to dismiss both *Glover* and *Kaczmarek*, pursuant to the first-filed rule.

ECF No. 42.  Proposed Intervenors' second motion to intervene was substantially similar to their initial motion in that their stated interest in intervening was for the sole purpose of dismissing this action or transferring it to California.  Plaintiffs opposed this motion on September 19, 2011, ECF Nos. 48-49, and Proposed Intervenors filed a surreply on September 26, 2011.  ECF No. 50.  The Court denied both motions to intervene on October 20, 2011.  ECF Nos. 53-54.

Plaintiffs have developed an in-depth understanding of the strengths and weaknesses of the claims, as well as the viability of the defenses put forward by Defendant through party and third-party discovery.  On June 9, 2011, Plaintiff Glover served Defendant with requests for production of documents, interrogatories, and a notice of deposition pursuant to Rule 30(b)(6).  On June 23, 2011, Plaintiff Glover issued subpoenas for production of documents to third parties Merkely + Partners, Vision Creative Group, MS&L, and Zenith Optimedia.  Thereafter, Plaintiff Glover issued a subpoena for documents and testimony to Connie Evers, the nutritional spokesperson for Ferrero's advertising and marketing campaign for Nutella.  Plaintiff Glover deposed Ms. Evers in Portland, Oregon on July 26, 2011.  Plaintiffs also issued a subpoena for documents and testimony to Isabelle Lambotte, who was involved in Defendant's marketing and advertising campaign.  Plaintiffs deposed Ms. Lambotte on October 4, 2011.  Defendant and third parties have produced approximately 53,000 pages of documents.

On August 8, 2011, Defendant served Plaintiff Glover with a set of interrogatories, to which Plaintiff Glover responded on September 6, 2011.  Defendant also served Plaintiff Glover with a set of document requests on October 4, 2011, but the parties agreed to postpone Plaintiff Glover's responses to the document requests during the ongoing settlement process.

While engaging in motion practice and discovery, the parties agreed to mediate before the late Honorable Nicholas J. Politan.  The parties conducted two in-person mediations before

Judge Politan on October 10, 2011 in New York, New York, and on November 2, 2011 in West Palm Beach, Florida.  These sessions resulted in the Settlement, which provides substantial injunctive and monetary benefits that Plaintiffs and Class Counsel believe is fair, reasonable, and adequate, and is in the best interests of Plaintiffs and the Settlement Class Members.

## B.     Terms of the Settlement

Under the terms of the Settlement, the parties have agreed that Defendant will pay $2,500,000 (the "Cash Settlement Amount") for distribution to Settlement Class Members who submit a valid Claim Form.  Settlement at ¶43.  Settlement Class Members can submit a claim for up to $4 per jar purchased during the Class Period up to a maximum of $20, subject to *pro rata* reduction based on if the aggregate number of claims exceeds the Settlement Fund.  *Id*. at ¶48.  Defendant also agrees to substantial injunctive provisions that remove the advertising Plaintiffs claim is deceptive.  Defendant agrees to revise its labeling and print and media advertising to reflect the changes agreed to as well as modify the content on the website for Nutella ("Injunctive Relief").  *Id*. at ¶¶39-42.  The Cash Settlement Amount and Injunctive Relief serve as full consideration for dismissal of this action against Defendant.  The parties have agreed to provide each other with full, mutual claim releases.  *Id*. at ¶¶66-67.  The Claims Administrator shall administer the funds to Settlement Class Members, which are to be paid out of the Gross Settlement Fund.  *Id*. at ¶46.  Notably, none of the Cash Settlement Amount will revert to Defendant.  *Id*. at ¶49.  Plaintiffs' expert, Peter L. Wright, evaluated Plaintiffs' claims, marketing-related documents produced by Ferrero during the litigation and Ferrero's revised label, website and proposed final scripts for new commercials and concluded that Ferrero's new marketing program "will significantly correct prior misimpressions" and "will not in the future mislead reasonable consumers regarding Nutella's nutritional value and role in a healthy

breakfast." Wright Decl. at ¶13(a)-(b). Mr. Wright opines that Ferrero's new advertising

campaign "will effectively educate reasonable consumers about how to do practical, balanced,

and nutritional breakfast planning, which may (or may not) include Nutella." *Id*. at ¶13(c). Mr.

Wright describes Ferrero's corrective marketing approach as "state-of-the-art," Wright Decl. at

¶13(d), explaining:

> In my opinion, the changes Ferrero proposes for its labeling, television
> advertising and website are likely, *in toto*, to significantly decrease the number of
> consumers who are misled about Nutella's nutritional value and about its role as
> part of a breakfast if added to other already-nutritious foods. From a
> communication standpoint, the proposed changes are substantial and provide
> significant benefits. The new materials are attention getting, focused, clear in
> language and narrative, and well integrated across media. The labeling will
> incorporate the Grocery Manufacturer's Association nutritional labeling program.
> The television ads avoid making an explicit or implied claim that Nutella is in and
> of itself a nutritious addition to a breakfast. They instead confine the claim to the
> more valid representation that Nutella can be added to an already-nutritious
> breakfast to make it tastier and more appealing to family members. Similarly, the
> proposed changes in the website materials are consistent with the overall message
> central to the proposed new television ads and label. As a result of the Settlement
> Agreement, Ferrero will have created a multi-media campaign that is highly
> integrated. This integration is of great benefit to consumers. Each medium by
> itself delivers the same basic message in a clear, conspicuous, readily
> comprehended way, and the combined effect of a consumer's exposures to these
> redundancies across the different media (ads, labels, website) is likely to
> substantially enhance consumer understanding of how to do effective nutritional-
> beneficial breakfast planning.

*Id*. at ¶14.

Additionally, subject to this Court's approval, Defendant has agreed not to oppose Class

Counsel's request for: (i) a fee award to be paid by Defendant or its insurance carrier not to

exceed $3,000,000 in connection with the Injunctive Relief obtained ("Injunctive Fee Award");

and (ii) reasonable attorneys' fees up to 30% of the Gross Settlement Fund created by Defendant

and reimbursement of expenses ("Cash Settlement Amount Fee Award"). *Id*. at ¶¶50-51.

Finally, subject to this Court's approval, Defendant has agreed that Plaintiffs may apply for an

Incentive Award by the Court for their efforts on this litigation not to exceed $2,000 each.  *Id.* at

¶56.  Class Counsel is submitting a separate application for an award of reasonable attorneys'

fees, reimbursement of expenses and approval of incentive awards to the Class Representatives.

## C.     Preliminary Approval and Notice to the Class

On February 3, 2012, this Court preliminarily approved the Settlement; found on a

preliminary basis that the requirements of Rules 23(a) and 23(b)(3) are satisfied; and

conditionally certified the following Class:

> [A]ll persons throughout the United States who purchased one or more of
> Defendant's Nutella brand hazelnut spread products ("Nutella") in any state other
> than California, at any time from January 1, 2008 through the date of Preliminary
> Approval (the "Class Period"), other than for resale or distribution.  Excluded
> from the Settlement Class Members are:  Ferrero; Defense Counsel; any judge
> presiding over any of the actions that together comprise the Actions or Related
> Actions; and any immediate family member of any such person(s).

ECF No. 67 at ¶¶2-4 ("Preliminary Approval Order").  The Court also appointed Plaintiffs

Glover and Kaczmarek as Class Representatives; Carella, Byrne and Scott+Scott as Class

Counsel; and Rust Consulting, Inc. as the Claims Administrator.  *Id.* at ¶¶4, 6.  Further, the Court

approved the Settlement Notices and the Notice Program.  *Id.* at 4.

Pursuant to the Court's Preliminary Approval Order, ¶6, Rust caused the Publication

Notice, in substantially the same form as preliminarily approved, *see* ECF No. 67 at ¶5, to be

published in the following magazines:  *Parents* (May 2012 issue), *People* (April 16, 2012 issue),

*Ser Padres* (May 2012 issue) and *Woman's Day* (May 2012 issue) as well as on the following

third-party websites:  *24/7 Real Media Network – Parenting Channel* (5,000,000 impressions

from April 6, 2012 through April 20, 2012) and *Facebook* (10,000,000 impressions from April 6,

2012 through April 20, 2012).  *See* Affidavit of Charlene Young re: Dissemination of Notice of

Class Settlement, and Information Regarding Claims Submitted to Date ("Young Affidavit"), ¶3

and Exhibits 2 and 3.

Pursuant to the Court's Preliminary Approval Order, ¶6, Rust also established a dedicated settlement website ("Settlement Website"), www.nutellaclassactionsettlement.com, which went "live" on March 2, 2012 and contains the Settlement Agreement, Class Notice, and information relating to filing a claim, opting out of the Settlement, objecting to the Settlement, deadlines relating to the Settlement, Frequently Asked Questions and other information relevant to the Settlement. *Id*. at ¶4 and Exhibit 4.  The Settlement Website also contains an electronic Claim Form to allow on-line submissions of claims as well as a Claim Form which can be downloaded, printed, and mailed to the Claims Administrator. *Id*.  As of May 23, 2012, the website has been visited approximately 1,078,410 times. *Id*.

Rust also maintains a case-dedicated P.O. box for claimant inquiries, Young Affidavit at ¶5, and a case-dedicated toll-free telephone number, 877-497-5858, with a pre-recorded message that answers frequently asked questions, and prompts the caller to press a telephone keypad number to request a Notice Packet be mailed to their address or to leave a message requesting a return call from a representative. *Id*. at ¶6.  As of May 23, 2012, approximately 1,264 calls have been received. *Id*.  Of those, 619 potential claimants have requested Notice Packets. *Id*. Between April 19, 2012 and May 23, 2012, Rust mailed 615 Notice Packets. *Id*.

As of May 23, 2012, Rust has received 253,413 claims from potential Settlement Class Members, although the final deadline for submission is July 5, 2012. *Id*. at ¶10.  As of May 23, 2012, no objections and five (5) requests for exclusion have been received by Rust or filed with the Court, although the deadline to do so is June 8, 2012. *Id*. at ¶¶8-9.

Class Counsel submit that the Settlement satisfies Rule 23 and is fair, reasonable, and adequate, and therefore, should be granted final approval.

## <u>LEGAL ARGUMENT</u>

A.    **Standard of Review for Final Settlement Approval and Class Certification for Settlement Purposes**

Plaintiffs move under Rule 23 for final approval of the Settlement and certification of a class for settlement purposes only ("Settlement Class").   As discussed in detail below, final approval of a class action settlement involves two fundamental inquiries.   First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   The second inquiry is whether the proposed settlement appears "fair, reasonable and adequate."   Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).   In determining whether to approve a settlement, the Third Circuit has noted that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."   *Id.* at 535; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits recognize the utility of … settlement classes' as a means to facilitate the settlement of complex nationwide class actions").[4]   In light of this public policy in favor of settlement generally and because this Settlement meets the Rule 23 requirements, the Settlement should be approved and the Settlement Class certified.

---

[4]    Unless otherwise noted, all citations are omitted and emphasis is added.

**B.      Class Certification Should Be Granted for Settlement Purposes Under Rule 23**

Class certification under Rule 23 has two primary components.  First, the party seeking class certification must first establish the four requirements of Rule 23(a):  "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')."  *Warfarin Sodium*, 391 F.3d at 527.  Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b).  *Cmty. Bank*, 418 F.3d at 302.  In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id.*  Rule 23(b)(3) requires that common questions "'predominate over any questions affecting only individual members'" and that class resolution be "'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*, 521 U.S. at 592-93.

In making this analysis, the district court may take the proposed settlement into consideration.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 308 (3d Cir. 1998); *Cmty. Bank*, 418 F.3d at 300.  In this respect, there is one material difference between the certification of litigation classes and settlement classes:

> Whether trial would present intractable management problems . . . is not a
> consideration when settlement-only certification is requested, for the proposal is
> that there be no trial.

*Amchem*, 521 U.S. at 620; *Cmty. Bank*, 418 F.3d at 309.  "The difference is key."  *Warfarin Sodium*, 391 F.3d at 529.  For example, the Third Circuit has explained that:

> In certification of litigation classes for claims arising under the laws of the fifty
> states, [the Third Circuit has] noted that the district court must determine whether
> variations in state laws present the types of insuperable obstacles which render
> class action litigation unmanageable … However, when dealing with variations in

state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.

*Id.* As discussed below, all the Rule 23 requirements are met.

### 1.    The Rule 23(a) Factors Are Met

#### a.    Numerosity

"To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).   Here, Plaintiffs easily establish the numerosity requirement. Further, 619 Notice Packets were specifically requested by potential Settlement Class Members and were mailed, there were 1,078,410 visits to the Settlement Website and 253,413 claims have been submitted thus far.   Young Affidavit at ¶¶4, 6, 10.   Given this data, the number of class members far exceeds that which would be necessary to satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40"); *Weber v. Government Employees Ins. Co.*, 262 F.R.D. 431, 442 (D.N.J. 2009) (class of 975 members in NJCFA action satisfied numerosity).

#### b.    Commonality

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium*, 391 F.3d at 527-28.   "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).   Here, the Settlement Class Members share many common issues of law and fact.   All Settlement Class Members were

subjected to the same advertised claims relating to Nutella's nutritional qualities, whether on the labeling, website, television commercials, or point-of-sale advertising, which were uniformly broadcast to all Settlement Class Members.  All Settlement Class Members also were, and are, similarly affected by having purchased Nutella for its intended and foreseeable purpose as promoted, marketed, advertised, packaged and labeled by Defendant.  Thus, questions of law and fact are common to all Settlement Class Members:

> (a) whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of Nutella;
>
> (b) whether Defendant represented that Nutella has characteristics, benefits, uses, or qualities that it does not have;
>
> (c) whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution and sale of Nutella violated the NJCFA;
>
> (d) whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, and sale of Nutella breached their express and implied warranties to Plaintiffs and the Class; and
>
> (e) whether Defendant's conduct, as set forth herein, injured members of the Class and whether they have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

In light of these common questions of fact and law, commonality is satisfied.  *See, e.g.*, *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 246 (E.D. Pa. 2009) (finding commonality requirement satisfied where "plaintiffs would need to establish whether the defendants developed, used, and taught deceptive practices to the sales agents and whether the defendants created or approved deceptive materials to be distributed to all purchasers"); *see also In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010) (commonality requirement in MDL'd consumer protection class action satisfied where "whether Gillette misrepresented the capabilities of the M3P razor to the

potential class, whether the potential class members sustained ascertainable damages from such conduct, and, if so, in what amount" were "common core questions").

      **c.**     **Typicality**

In considering typicality under Rule 23(a)(3), the court must determine whether "'the named plaintiffs['] individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'"  *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims.  *Id.*  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001); *Barnes v. Am. Tobacco, Inc.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, where the Settlement Class Members all purchased Nutella with the alleged misrepresentations on its label and were exposed to Defendant's uniform deceptive advertising, marketing, and promotional campaign, typicality is satisfied.  ECF No. 1, ¶85.  Because the claims of Plaintiffs and the Settlement Class Members "all arise from the alleged misrepresentations by [Ferrero]," the typicality requirement is met.  *Johnston*, 265 F.3d at 185. *See also Weber*, 262 F.R.D. at 442 (typicality satisfied where named Plaintiffs alleged they suffered harm as a result of the same conduct that injured absentee class members); *Am. Investors Life Ins.*, 263 F.R.D. at 246 ("all of the plaintiffs' claims arise from the same allegation that the defendants engaged in a scheme to sell long-term deferred annuities to purchasers by using fraudulent misrepresentations.  Because this matter challenges the defendants' uniform course of conduct as it affects the entire class, the class satisfies typicality"); *M3 Power Razor*,

270 F.R.D. at 55 (finding typicality requirement satisfied where "the claims of the Representative Plaintiffs are based on the same event (purchase of an M3P razor based on misleading advertisements) as the potential class members").

> ### d.   Adequacy

The adequacy requirement has two components intended to ensure that the absentees' interests are fully pursued: (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees, and (b) the plaintiffs' counsel must be qualified to represent the class. *GM Trucks*, 55 F.3d at 800.

As for the first component, the court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185.   There is no conflict between the proposed Class Representatives and the Class.   Indeed, Plaintiffs Glover and Kaczmarek are typical consumers who purchased Nutella during the Class Period and share the same interests as other Class Members in seeking to have the allegedly deceptive advertising of the product stopped and seeking a recovery for deceived class members.   *See, e.g., M3 Power Razor*, 270 F.R.D. at 55 ("the Representative Plaintiffs' interests generally align with the class as a whole, because all parties, named and unnamed, are seeking redress from what is essentially the same injury, the purchase of an M3P razor based on misleading advertisements.").

As far as the adequacy of counsel is concerned, the Class is represented by Scott+Scott and Carella, Byrne, law firms with national reputations in the class action field.   Moreover, Carella, Byrne has been in leadership positions in many of the most significant class actions filed and resolved in this District, including *O'Brien v. LG Electronics USA, Inc*., No. 10-cv-03733 (DMC)(JAD).   Prelim. Approval Cecchi Decl., Exhibit 2 (ECF No. 62-12).   As is explained in detail in the firm résumé, Scott+Scott has extensive experience handling class actions and other

complex litigation, and claims of the type asserted in this action specifically.  Prelim. Approval

Cecchi Decl., Exhibit 3 (ECF No. 62-13).  Scott+Scott also has served as lead or co-lead counsel

in many high-profile class actions in this District, including *In re Aetna UCR Litig.*, MDL No.

2020, Master File No. 07-3541 (SRC)(PS).  This Court previously reviewed and considered, and

is thus acquainted with, the relevant qualifications and experience of Scott+Scott and Carella,

Byrne and appointed these firms as interim lead counsel for the putative class, *see* ECF No. 41,

and preliminarily approved these firms as Class Counsel.  *See* ECF No. 67 at 4.

Accordingly, both prongs of the adequacy inquiry are satisfied.

### 2.       The Rule 23(b)(3) Factors Are Met

#### a.       Predominance

As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in

certain cases alleging consumer fraud … ."  521 U.S. at 625.  "This is even more true in a

settlement-only class action, where the court certifying the class need not examine issues of

manageability."  *Cmty. Bank*, 418 F.3d at 306.  The Third Circuit just recently reaffirmed the

principles that inform the predominance analysis when considering certification of a settlement

class:

> From our case law, we can distill at least three guideposts that direct the
> predominance inquiry: first, that commonality is informed by the defendant's
> conduct as to all class members and any resulting injuries common to all class
> members; second, that variations in state law do not necessarily defeat
> predominance; and third, that concerns regarding variations in state law largely
> dissipate when a court is considering the certification of a settlement class.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  Here, Plaintiffs have alleged

claims on behalf of a nationwide class under the NJCFA and for breach of express and implied

warranties.  Because Plaintiffs seek certification of a settlement-only class, the existence of any

individual inquiry does not preclude class action treatment where all class members face the

necessity of proving the same fraudulent scheme. *Cmty. Bank*, 418 F.3d. at 309; *see also Prudential*, 148 F.3d at 315 ("'presence of individual questions as to the reliance of each [plaintiff] does not mean that the common questions of law and fact do not predominate'").

"Courts have found that cases alleging a common scheme of deception through the use of uniform misrepresentations and omissions satisfy the predominance requirement." *Am. Investors Life Ins.*, 263 F.R.D. at 236 (citing cases). For instance in *Warfarin Sodium*, the Third Circuit affirmed the district court's ruling that class members shared predominantly common issues where the corporate defendant allegedly employed a deceptive "broad-based, national campaign conducted by and directed from corporate headquarters," such that proof of liability of the defendant's conduct would be shown with "evidence which is common to the class members" because "liability depends on the conduct of [the defendant], and whether it conducted a nationwide campaign of misrepresentation and deception, [and] does not depend on the conduct of individual class members." 391 F.3d at 528-30. Similarly, here, the core, overriding questions in this case relate to Defendant's deceptive labels, marketing, and advertising, which contain uniform and nationally disseminated messages, and whether those representations violated the law. Thus, the predominance factor is satisfied. *See, e.g., In re Phillips/Magnavox Television Litig*, Civil Action No. 09-3072 (CCC), 2012 WL 1677244, at *7 (D.N.J. May 14, 2012) (predominance satisfied where central legal question as to the defendant's conduct was common to all class members' claims); *Weber*, 262 F.R.D. at 443 (same); *M3 Power Razor*, 270 F.R.D. at 56 (finding the predominance requirement satisfied where "[t]he dominant common questions include whether Gillette's advertising was false or misleading, whether the company's conduct violated the statutory and/or common law causes of action delineated in the Amended Complaint, and whether the class members suffered damages as a result of this conduct.").

b.    **Superiority**

Rule 23(b)(3) also requires a finding that "a class action [be] superior to other available methods for the fair[] and efficient[] adjudicati[on] [of] the controversy."  The following factors are relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

*Id.*; *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Applying these factors in *Warfarin Sodium*, the Third Circuit held that the superiority requirement was satisfied in light of the "potentially large number of class members . . . including some 2 million consumers and potentially thousands of TPPs."  391 F.3d at 534. "Individual consumer class members [had] little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer [had] a very small claim in relation to the cost of prosecuting a lawsuit." *Id.*  "Thus, from the consumers' standpoint, a class action facilitate[d] spreading of the litigation costs among the numerous injured parties and encourage[d] [the] private enforcement of the statutes." *Id.*  The "relatively small number of individual lawsuits pending against [the defendant] indicated . . . that there was a lack of interest in individual prosecution of claims." *Id.*  Finally, the court cited the district court's finding that "it was desirable to concentrate litigation in Delaware, where [the defendant] had its principal place of business and where several initial class action lawsuits had been filed." *Id.*  In *Prudential*, the Third Circuit cited the same factors, as well as the avoidance of "a potentially great strain on judicial resources." *Prudential*, 148 F.3d at 316.

The reasoning of these cases is directly applicable here, where the Class numbers in the hundreds of thousands, and, absent class treatment, these Settlement Class Members would never have their day in court because individual suits would be cost-prohibitive given the relatively small amounts at stake.  As the Supreme Court explained in *Amchem*:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

521 U.S. at 617.  Even if this were not the case, thousands upon thousands of individual trials would impose a massive burden on the Court's resources.  By contrast, this settlement makes manageability concerns irrelevant because "the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  Finally, it is desirable to concentrate this litigation in New Jersey, where Defendant admits the marketing and advertising at issue were created and disseminated, as alleged.  ECF No. 1, ¶¶2, 5.  *See, e.g., Phillips/Magnavox*, 2012 WL 1677244, at *7 ("To litigate the individual claims of even a tiny fraction of the potential Class Members would place a heavy burden on the judicial system and require unnecessary duplication of effort by all parties.").

In short, this case meets all the requirements for the certification of a settlement class under Rule 23(a) and (b)(3).

**C.   The Proposed Settlement Is Fair, Reasonable and Adequate, Meriting Final Court Approval Under the *Girsh* Factors**

Rule 23(e) requires a determination by the district court that the proposed settlement is "'fair, reasonable and adequate.'"  *GM Trucks*, 55 F.3d at 785.  The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate."  The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  The

Settlement meets each of these factors, and thus, should be approved.

### 1. Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures 'the probable costs, in both time and money, of continued

litigation.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001).  "By measuring the

costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim

amicably."  *GM Trucks*, 55 F.3d at 812.  This factor undoubtedly weighs in favor of settlement.

In *Warfarin Sodium*, the parties already had litigated the case for three years.  391 F.3d at

537.  Nevertheless, the court concluded that the first *Girsh* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial.  Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class.  In a class action of this magnitude, which seeks to provide recovery for Coumadin consumers and TPPs nationwide, the time and expense leading up to trial would have been significant.

*Id.* at 536.  In this Nutella litigation, the path from this stage of the litigation to a final judgment

is likely to be equally long.  This case has been pending for approximately one year.  The

Consolidated Amended Complaint has yet to be filed (as the date for filing it has been postponed

pending settlement negotiations).  *See* ECF Nos. 58, 60.  Additional party and non-party

discovery would be sought, requiring time-consuming review.  The case also would require

extensive expert analysis of the nutritional qualities of Nutella as well as the consumer impact of

Defendant's representations regarding the product's purported nutritional attributes.  The case likely would shape up to be a battle of the experts, and thus, expert expenses would be substantial.  As a putative nationwide class action, complex legal and factual issues would be the subject of pretrial motions, including for class certification.  The class certification decision likely would lead to the inevitable Rule 23(f) interlocutory appeal, potentially delaying prosecution of the case should a stay pending appeal be granted.  Given the prospect of protracted litigation, engendering enormous time and monetary expenditure, this factor weighs in favor of final approval.

### 2.  The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential,* 148 F.3d at 318.  Of the 253,413 claims received as of May 23, 2012, only five (5) Settlement Class Members have requested exclusion from the Class.   Young Affidavit at ¶¶9-10.  Further, no Settlement Class Member has yet to file with the Court an objection to the Settlement with less than two weeks to go to do so.[5]  Plaintiffs recognize objections still may be filed and will respond to each no later than seven days prior to the Final Approval Hearing, as provided in the Settlement.   Settlement at ¶36.   However, given that 253,413 Claim Forms have been received and only five (5) requests for exclusion have been received, Young Affidavit at ¶9, it is unlikely that there will be more than a handful of objections filed.  Under *Girsh*, such a small number of negative responses favors approval of a class action settlement agreement.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement).   "The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re CertainTeed Corp.*

---

[5]      The deadline either to request exclusion from the Settlement or to file an objection to the Settlement is June 8, 2012.  Settlement at ¶33.

*Roofing Shingle Products Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa 2010) (citing *In re Cendant*, 264 F.3d at 234-35). A "paucity of protestors . . . militates in favor of the settlement." *See Bell Atl.*, 2 F.3d at 1314; *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F. Supp. at 537 (small number of negative responses to settlement favors approval); *Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (100 objections out of 30,000 class members weighs in favor of settlement). The lack of any meaningful negative response to the Settlement evinces the quality and value of the Settlement. Class Counsel will provide a final tally of the objections, and respond fully to their substance. The data to date, however, reflects overwhelming support from the Class.

### 3. The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "'captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Cendant*, 264 F.3d at 235 (quoting *GM Trucks*, 55 F.3d at 813). The discovery considered by the court includes both "formal" and "informal" discovery received from the defendant, third-parties and experts. *See, e.g., GM Trucks*, 55 F.3d at 813 (expert testimony and other evidence from parallel state court proceedings); *Prudential*, 148 F.3d at 319 (witness interviews); *Cendant*, 264 F.3d at 235 (public filings); *Warfarin Sodium*, 391 F.3d at 537 (consultation with experts).

Although the case is in an early stage of the litigation, Plaintiffs have conducted extensive discovery into Defendant's advertising of Nutella and retained experts in the field. Moreover, Class Counsel have extensive experience in litigating cases of this type, so they are also aware of the legal merits and pitfalls in litigating nationwide consumer class actions. Class

Counsel is absolutely confident that they have a thorough appreciation of the facts – good and bad – that bear upon the merits of the claims in this litigation.  *See, e.g., Weiss*, 899 F. Supp. at 1301 (recognizing early settlement is not a bar to approval where there is no evidence of collusion and the settlement represents substantial concessions by both sides).

### 4.  Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  *GM Trucks*, 55 F.3d at 814.  While Plaintiffs are confident in the merits of their case, they also recognize the uncertainties of litigation where Plaintiffs must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  And, although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree.  *See, e.g., In re Epogen and Aranesp Off-Label Mktg. and Sales Pract. Litig.*, No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285 (C.D. Cal. June 17, 2009) (dismissing with prejudice MDL litigation involving RICO and consumer fraud claims involving promotion of prescription drugs); *District 1199P Health and Welfare Plan v. Janssen, L.P.*, No. 06-3044 (FLW), 2008 WL 5413105 (D.N.J. Dec. 23, 2008) (RICO); *Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008) (RICO and consumer fraud).  These risks include the risk of denial of class certification or the granting of summary judgment.  The Settlement provides substantial monetary and injunctive benefits without the inherent risk of establishing liability at trial.  Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement, particularly here, where the Settlement

23

provides the Class with a substantial benefit that is not only fair, reasonable, and adequate, but an excellent result.

### 5. Risks of Establishing Damages

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here in the Nutella litigation as Settlement Class Members could have difficulty at trial establishing that they were damaged and to what extent they were damaged. Thus, this factor weighs in favor of final approval.

### 6. Risks of Maintaining Class Action Status Through Trial

Because the prospects for obtaining certification "have a great impact on the range of recovery one can expect to reap from the [class] action," *see GM Trucks*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *See Girsh*, 521 F.2d at 157. "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re*

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008).   While this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that given the Third Circuit's requisite rigorous class certification analysis, class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class.

For example, manageability is not a concern with settlement classes.  *Amchem*, 521 U.S. at 620; *Cmty. Bank*, 418 F.3d at 309.   Differences in state law that often complicate the certification of a nationwide litigation class, *see, e.g., In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 n.11 (3d Cir. 2001), are "irrelevant to certification of a settlement class." *Warfarin Sodium*, 391 F.3d at 529.  There are also issues concerning the causation and injury elements of Plaintiffs' claims.  While some courts have held that such issues can be tried on a class-wide basis, *see, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996), other decisions have taken a different view.  *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008). What is certain is that any decision granting certification would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge before the class could proceed to trial; an appeal from any verdict or judgment in favor of the class likewise would follow.

If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to pursue claims in their own behalf, with the practical result of no recovery by anyone.  *See Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The ***realistic*** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).   The proposed Settlement provides a remedy now to all class members, rather than risking an

uncertain result after years of expensive litigation.  Thus, this factor weighs in favor of final approval.

### 7.      Ability to Withstand Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240.  It is likely that Ferrero could withstand a judgment greater than it is paying as a settlement here.  However, that does not, by itself, militate against final approval.  In *Warfarin Sodium*, for example, the court stated that:

> Although the plaintiffs do not dispute that DuPont's total resources far exceed the settlement amount, the fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the consumer and TPP class members are entitled to under the theories of liability that existed at the time the settlement was reached.  Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here.

391 F.3d at 538; *see also GM Trucks*, 55 F.3d at 818 ("no error" in the district court's decision not to "attribute any significance" to defendant's ability to withstand a greater judgment); *Am. Investors Life*, 263 F.R.D. at 242 (finding this factor neutral where the defendant, as a major corporation, could withstand greater judgment).

### 8.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together.  They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322; *see also Warfarin Sodium*, 391 F.3d at 538 (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case").  As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the

litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806.

Here, the likelihood that a greater result could be achieved at trial is remote as the Settlement achieves complete injunctive relief with the corrective marketing plan and substantial monetary relief.  Settlement Class Members can receive the entire purchase price for each purchase up to five jars, or $20.00, subject to *pro rata* reduction based on the aggregate number of claims.  Given the inherent risks in litigating a damages class in this case, this benefit is highly significant.  In addition to the monetary award to Class members, the Settlement also provides for significant injunctive relief to consumers in the form of a change in the labeling and corrective advertising for Nutella.  *Id*. at ¶¶39-42.  The heart of this action is the contention that Ferrero's marketing campaign, which was the accelerant to the dramatic enhancement of Nutella's sales, was based upon a clever but deceptive premise – namely, that Nutella is, ***in and of itself***, a healthy food product that could and should be given to children and others at breakfast, among other meals, and as snacks throughout the day.  As Plaintiffs allege, this was simply not true, as an examination of the actual content of the product attests.  ECF No. 1, ¶21.  Plainly, through this lawsuit, Class Counsel achieved full relief by negotiating a complete halt to the offending ad campaign.  As a result, going forward, the consumer no longer will be exposed to false messaging about the nutritional value of the product.  This is no small thing.  To the contrary, it is a significant and highly valuable achievement that Class Counsel accomplished against a determined and well-funded adversary that had literally spent millions of dollars on the very advertising campaign the class sought to end.  Settlement Class Members, regardless of whether they submit a claim, now will receive a more realistic depiction of Nutella's proper role

in balances, nutritional breakfast planning for children.  *See generally* Wright Decl.  It is beyond

question that the Injunctive Relief achieved here is highly salutary and material.

Overall, the *Girsh* factors militate strongly in favor of approving the proposed Settlement.

The settlement allows a substantial real recovery for all Class members now, rather than waiting

for years for a recovery which might be more than the amount of the Settlement, but where there

is a substantial risk of recovering nothing.  Class Counsel has made a full evaluation of the

relevant facts and law and believe that, under all of the facts and circumstances, the Settlement is

not only fair and reasonable, but represents a significant victory for the Class.

**D.     The Notice Program Satisfies Rule 23 and Due Process and Has Been Fully
        Implemented**

To protect the rights of absent members of the Class, the Court must ensure that all Class

Members who would be bound by a class settlement are provided the best practicable notice.

*See* Fed. Rule Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12

(1985).  The best practicable notice is that which is "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950).  Where a court preliminarily certifies a class and approves a proposed

settlement, "proper notice must meet the requirements of [Rules] 23(c)(2)(B) and 23(e)."  *In re*

*Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2012 WL 1071240, at *13 (D.N.J. Mar.

30, 2012) (Cecchi, J.).  Notice that is compliant with Rule 23(c)(2)(B) "must inform class

members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class

claims, issues, or defenses; (4) the class member's right to retain an attorney; (5) the class

member's right to exclusion; (6) the time and manner for requesting exclusion; and (7) the

binding effect of a class judgment on class members under Rule 23(c)(3)."  *Id.*; Fed. R. Civ. P.

23(c)(2)(B)(i)-(vii).  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).  As detailed above, the Settlement Class Members have received Notice of the Settlement in conformance with due process and Rules 23(c)(2)(B) and 23(e)(1).

The Notice Program that the Court initially and preliminarily approved on February 3, 2012, was fully implemented.  The Claims Administrator sent 619 Notice Packets were disseminated to individuals who contacted the Claims Administrator, and the wider publication notice was placed in *Parents* May 2012 issue, *People* April 16, 2012 issue, *Ser Padres* May 2012 issue and *Woman's Day* May 2012 issue and was posted on the following third-party websites: 24/7 Real Media Network - Parenting Channel from April 6 – 20, 2012 (5 million impressions) and Facebook from April 6 – 20, 2012 (10 million impressions).  Young Affidavit at ¶¶3, 6.  In addition to direct mail notice, print advertisements, and website postings, notice was posted on the dedicated settlement website, www.nutellaclassactionsettlement.com, established by the Claims Administrator, that contains the Settlement Agreement, Class Notice, and information relating to filing a claim, opting out of the Settlement, objecting to the Settlement, deadlines relating to the Settlement, Frequently Asked Questions, and other information relevant to the Settlement.[6]  *Id*. at ¶4.  Additionally, the Settlement Website contains an electronic Claim Form to allow on-line submissions of claims as well as a Claim Form which can be downloaded, printed, and mailed to the Claims Administrator.  *Id*.  As of May 23, 2012, the website has been visited approximately 1,078,410 times.  *Id*.  This Notice Program has informed the Class

---

[6]     The Notice, Claim Form and Frequently Asked Questions on the Nutella Consumer Class Action website also were translated into Spanish.  Young Affidavit at ¶4.

Members fully of their rights and benefits under the Settlement.  All required information has been fully and clearly presented to the Settlement Class Members.  Accordingly, this direct mail notice, in connection with a widespread publication notice campaign, is the best practicable notice under the circumstances, satisfying both due process and Rule 23.  *See, e.g.*, *Insurance Brokerage*, 2012 WL 1071240, at *19 (finding notice program comprised of short-form notice, long-form notice and publication notice to be compliant with Rule 23); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, MDL No. 2103, 2011 WL 5599129, at *5-*6 (N.D. Ill. Nov. 16, 2011) (finding a notice program that "utilized a combination of print newspaper publication, website publication notice, and inventive targeted on-line advertising" was "the best method practicable to all others and comports with Due Process and Rule 23").

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant the relief requested herein.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Attorneys for Plaintiff Kaczmarek and the Class*


By:     /s/ James E. Cecchi
        JAMES E. CECCHI


Dated: May 25, 2012


Christopher M. Burke
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
(619) 233-4565

Joseph P. Guglielmo
SCOTT+SCOTT LLP

500 Fifth Avenue, 40th Floor
New York, NY 10110
(212) 223-6444

*Counsel for Plaintiff Glover and Class Counsel*