# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>NUTELLA MARKETING AND<br>SALES PRACTICES LITIGATION | Civil Action No. 11-1086(FLW)(DEA) |

-------------------------------------------------------------------------------------------------

## PLAINTIFFS' RESPONSE TO OBJECTIONS

-------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
Donald E. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Joseph P. Guglielmo
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
(212) 223-6444

Christopher M. Burke
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
(619) 233-4565

*Class Counsel*
*(Add'l Counsel on Signature Page)*

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 4

I.   The Objections to the Settlement Are Meritless ........................................... 4

    A.   The Dubious Credibility of the Objectors Supports That Their Objections Must Be Overruled .................................................................. 4

    B.   The Settlement Class Is Properly Certified Under Rule 23 ...................... 8

    C.   The Notice Program Comports with Due Process and Rule 23 .............. 10

    D.   The Cash Settlement Amount Provides a Substantial Benefit to the Class in Light of Significant Litigation Risk .................................................. 13

    E.   The Injunctive Relief Provides Significant Monetary Value to the Class 15

    F.   The Injunctive Relief Is a Necessary Component of the Settlement ........ 16

    G.   The Injunctive Relief Provides Substantive Benefits to the Class .......... 18

    H.   The Benefit of the Injunctive Relief Runs to the Class .......................... 26

    I.   The Settlement Is Procedurally Fair....................................................... 27

    J.   A Quick Pay Provision Is Not Improper ................................................ 30

    K.   The Reaction of the Class Supports Final Approval................................ 31

    L.   The Other Miscellaneous Objections to the Fairness of the Settlement Should Be Overruled .......................................................................... 33

II.   The Objections to Attorneys' Fees, Expenses and Incentive Awards Are Without Merit ................................................................................................ 36

    A.   The Requested Attorneys' Fees and Expenses Are Reasonable .............. 37

    B.   Approval of the Requested Fee Does Not Offend Third Circuit Precedent .................................................................................................... 47

C.    Class Counsel's Request for Fees Comports with Rule 23(h) ................. 52

D.    The Incentive Awards Should Be Approved ........................................... 53

CONCLUSION ................................................................................................ 54

## TABLE OF AUTHORITIES

**Cases**

*Aguinaga v. United Food and Commercial Workers Intern. Union*,
   993 F.2d 1480 (10th Cir. 1993).......................................................................... 51
*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975)............ 50
*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................. 23
*Amunrud v. Spring Commc'ns Co. L.P.*,
   No. CV 10-57, 2012 WL 443751 (D. Mont. Feb. 10, 2012).............................. 28
*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993).......................................... 26
*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)................................................... 50
*Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000).......................................47, 51
*Careccio v. BMW of N. Am. LLC*,
   CIV. A. 08-2619, 2010 WL 1752347  (D.N.J. Apr. 29, 2010)........................... 33
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S. Ct. 2786 (1993) ............................................................. 23
*David v. Am. Suzuki Motor Corp.*,
   No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. April 15, 2010) ....................... 7
*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J 2010), *rev'd on other*
   *grounds and remanded sub nom. Dewey v. Volkswagen Aktiengesellschaft*, 681
   F.3d 170 (3d Cir. 2012)..........................................................................42, 45, 53
*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010).................................. 44
*Evans v. Jeff D.*, 475 U.S. 717 (1986) ................................................................. 44
*Feder v. Electronic Data Systems Corp.*, 248 Fed. Appx. 579 (5th Cir. 2007) ....... 5
*First State Orthopaedics v. Concentra, Inc.*,
   534 F. Supp. 2d 500 (E.D. Pa. 2007)............................................................... 26
*Franklin Balance Sheet Inv. Fund v. Crowley*,
   2007 WL 2495018 (Del. Ch. Aug. 30, 2007) ................................................... 42
*Gates v. Rohm And Haas Co.*,
   Civil Action No.06-1743, 2008 WL 4078456 (E.D. Pa. Aug. 22, 2008) ........... 32
*Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993)................................................. 10
*Hall v. AT & T Mobility LLC*,
   No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010)..................passim
*Hammer v. Vital Pharmaceuticals, Inc.*,

No. 11-4124, 2012 WL 1018842 (D.N.J. Mar. 26, 2012).................................. 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................... 13

*Heller v. Quovadx, Inc.*, 245 Fed. Appx. 839 (10th Cir. 2007)............................. 5

*In re "Agent Orange" Product Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ........... 12

*In re Am. Investors Life Ins. Co. Annuity Mkting and Sales Practices Litig.*,
    263 F.R.D. 226 (E.D. Pa. 2009) ........................................................................ 7

*In re AT & T Corp.*, 455 F.3d 160 (3d Cir. 2006)..........................................14, 45

*In re ATI Techs., Inc. Sec. Litig.*,
    CIV.A. 01-2541, 2003 WL 1962400 (E.D. Pa. Apr. 28, 2003)......................... 47

*In re Automotive Refinishing Paint Antitrust Litig.*,
    MDL Docket No. 1426, 2004 U.S. Dist. Lexis 29162 (E.D. Pa. Oct. 13, 2004) 48

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)......27, 28

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .. 5

*In re Diet Drugs Products Liab. Litig.*, 553 F. Supp. 2d 442 (E.D. Pa. 2008)..16, 45

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ...... 17

*In re Elec. Carbon Products Antitrust Litig.*, 447 F. Supp. 2d 389 (D.N.J. 2006). 46

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008)............................................................... 7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).............................................................................. 32

*In re HP Laser Printer Litig.*,
    No. SACV 07-667, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011)................... 28

*In re Initial Pub. Offering Sec. Litig.*,
    Master File No. 21 MC 92(SAS), 2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011) 5

*In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289 (S.D.N.Y. 2010) ...5, 7

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ...................... 30

*In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, No. 04-5184 (CCC),  2012
    WL 1071240 (D.N.J. Mar. 30, 2012) ...........................................................12, 35

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) . 54

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)............ 52

*In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y.1998) 30

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).........................................................................28, 39

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ...................................................................... 29

*In re Prudential Securities, Inc. L.P. Litig.*,
   MDL No. 1005, 1995 WL 798907 (S.D.N.Y. 1995) ......................................... 15
*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. 03-0085 (FSH), 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ......................... 39
*In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294 (3d Cir. 2005) ................................. 38
*In re Schering-Plough/Merck Merger Litig.*,
   No. 09-CV-1099(DMC), 2010 WL 1257722 (D.N.J. Mar. 26, 2010)................ 16
*In re Staples Inc. Wage and Hour Employment Practices Litig.*,
   CIV. A. 08-5946 (KSH), 2011 WL 5413221 (D.N.J. Nov. 4, 2011).................... 7
*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   No. MDL 3:07-md-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) .......... 30
*In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107 (D. Minn. 2009) .. 5
*In re Wal-Mart Wage and Hour Employment Practices Litig.*,
   Civ. No. 06-225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ................................ 7
*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................... 24
*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v.*
   *General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)....................................... 23
*Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ......................... 44
*Lake v. First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) ...................... 29
*Lan v. Ludrof*, 1:06CV114, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008)............. 47
*Manual for Complex Litigation (Fourth)*, §21.66 (2004) ..................................... 34
*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006) ........................... 17
*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ................16, 26, 40
*McLennan v. LG Electronics USA, Inc.*,
   2:10-CV-03604 (WJM), 2012 WL 686020 (D.N.J. Mar. 2, 2012).................1, 13
*Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) ................... 46
*Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113 (D.N.J. 2010)............... 8
*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975)............................. 43
*Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006)................ 19
*Myers v. MedQuist, Inc.*,
   Civil No. 05-4608(JBS), 2009 WL 900787 (D.N.J. Mar. 31, 2009) ................. 32
*Nichols v. SmithKline Beecham Corp.*,
   No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ................................. 15
*O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ............... 5
*Plymouth County Contributory Ret. Sys. v. Hassan*,

No. 08-1022(DMC), 2012 WL 664827 (D.N.J. Feb. 28, 2012) ......................... 15

*Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139 (3d Cir. 1998) ................... 51

*Skypala v. Mortgage Electronic Registration Sys. Inc*.,
No. 08-5867, 2009 WL 2762247(D.N.J. Sept.1, 2009) ..................................... 35

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011)....................... 19

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ............................... 14

*Sullivan v. DB Investments, Inc*., 667 F.3d 273 (3d Cir. 2011) ........................8, 44

*Sullivan v. DB Investments, Inc.*,
No. 04-2819 (SRC), 2008 WL 8747721 (D.N.J. May 22, 2008) ...................... 43

*Todd v. Retail Concepts, Inc.*,
No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008)........................ 7

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............... 8

*U.S. ex rel. Bogart v. King Pharmaceuticals*, 493 F.3d 323 (3d Cir. 2007)47, 49, 50

*Uhl v. Thoroughbred Tech. & Telecomms. Inc*., No. IP00-1232-C-B/S, 2001 WL
987840 (D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002)).............. 10

*Varacallo v. Mass. Mutual Life Ins. Co*., 226 F.R.D. 207 (D.N.J. 2005) .............. 32

*Weinberg v. Sprint Corp*., 173 N.J. 233 (2002) ................................................... 17

*Williams v. Gerber Products Co*., 552 F.3d 934 (9th Cir. 2008)........................... 20

*Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) ............................ 26

*Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171 (3d Cir. 2001) ...................... 43

**Statutes**

28 U.S.C §1715 ................................................................................................. 38

**Rules**

Fed. R. Civ. P. 23(e)(4)..................................................................................... 36

Fed.R.Civ.P. 23(a)(4)........................................................................................... 9

**Treatises**

29 Fed. Prac. & Proc. Evid. §6266.................................................................... 24

## PRELIMINARY STATEMENT

The Settlement[1] before the Court represents an outstanding result from any perspective.  Settlement Class Members agree:  as of June 28, 2012 (only one week before the July 5, 2012 claims filing deadline) more than 200,000 claims have been received while only six opt outs and seven objections (by 16 putative Settlement Class Members) have been received.[2]  *See* Supplemental Affidavit of Charlene Young ("Supp. Young Aff."), ¶¶10-11.  This represents an opt-out/objection rate of only 0.011%.  Further, only one state official who received notice under 28 U.S.C §1715 has objected to the Settlement.[3]  These strong claims numbers and very low opt out and objection numbers are not surprising given the substantial relief to which the Class is entitled under the Settlement.

---

[1]  All capitalized terms not otherwise defined are defined in the Class Action Settlement Agreement ("Settlement").  ECF No. 62-3.

[2]  Objectors Katie Sibley, Daniel Sibley, Jenny Iriarte, Janis Johnson and Sherri Johnson (the "Sibley Form Objectors") filed lawyer-generated form objections that parrot the objection submitted by Gary Sibley, an attorney at The Sibley Firm.  *Compare* ECF Nos. 80-83, 85 *with* 86.  *See also* Declaration of Joseph P. Guglielmo in Response to Objections ("Guglielmo Decl."), Exhibit E (chart comparing objections).  Thus, Plaintiffs count the objections of the Sibley Form Objectors and of Gary Sibley as one objection.  *See McLennan v. LG Electronics USA, Inc.*, 2:10-CV-03604 (WJM), 2012 WL 686020, at *2, n.2 (D.N.J. Mar. 2, 2012) (treating "nearly identical" objections as one objection).

[3]  Although the Attorney General for the State of Texas has objected to the attorneys' fees, they have not objected to the Settlement.  *See* May 30, 2012 Ltr. of Jim B. Cloudt, Asst. Attorney General of the State of Texas ("Cloudt Ltr.").

Settlement Class Members are entitled to their *pro rata* share of the $2.5 million Cash Settlement Amount.  Assuming Class Counsel's attorneys' fees and expenses and Plaintiffs' incentive awards are granted, Settlement Class Members will receive approximately $1.30 per jar (up to a maximum recovery for five jars purchased), which represents approximately between 20% and 37% of the purchase price[4] – a tremendous result that is well above most class action recoveries.  Further, the Injunctive Relief will benefit the Class by correcting the advertising and marketing and prohibiting Ferrero from continuing to engage in deceptive advertising.  In response to the objectors who claim the Injunctive Relief is valueless, Plaintiffs submit the Expert Report of R. Larry Johnson, who states the Injunctive Relief conservatively is valued at between $6.5 million and $41.7 million.  *See* Expert Report of R. Larry Johnson ("Johnson Report").  Thus, contrary to the Objectors' unfounded arguments, the value of the Settlement ***as a whole*** is between $9 and $44.2 million.  Plaintiffs' expert Peter Wright also opined that the revised labeling and advertising campaign serves to correct the potentially misleading messages that were the subject of Plaintiffs' Complaint.  ECF No. 69-7, Declaration of Peter L. Wright ("Wright Decl.").  Thus, the Settlement provides

---

[4]    Purchase price was determined from advertised purchase price at Wal-Mart. *See*                      http://www.walmart.com/ip/Hazelnut-With-Skim-Milk-Cocoa-Spread/14574564   and   http://www.walmart.com/ip/Nutella-Hazelnut-With-Skim-Milk-Cocoa-Spread-13-oz/10451273.

the Class a monetary remedy for ***past harm*** and also benefits the Class by preventing ***continuing and future harm***.

The objections do not alter these conclusions.[5]  While the Objectors argue generally that the Cash Settlement Amount could have been higher and that the Injunctive Relief is illusory and cannot support the requested attorneys' fee award, these arguments – as demonstrated herein – are utterly without merit.  Indeed, the fact that an Objector wants more money or different injunctive relief "has no bearing on whether the terms of the Settlement Agreement itself are fair and reasonable.  After all, a settlement is, by its very nature, a compromise that naturally involves mutual concessions."  *Hall v. AT & T Mobility LLC,* No. 07-5325 (JLL), 2010 WL 4053547, at *8 (D.N.J. Oct. 13, 2010).

Moreover, the record shows that the Objectors (and/or their counsel) are mostly serial or professional objectors.  For example, two objectors have

---

[5]     *See*  Objection of Robert Falkner and Kristen Streeter ("Falkner Objectors"), ECF No. 72 ("Falkner Obj."); Objection of Agatha Bochenek, Brandon Goodman and Edward Hagele ("Bochenek Objectors"), ECF No. 76 ("Bochenek Obj."); Objection of Daniel Greenberg and Sylvia Bader, ECF No. 77 ("Greenberg Obj."); Objection of Chris Andrews, ECF No. 78 ("Andrews Objection"); Objection of Clark Hampe, ECF No. 79 ("Hampe Obj."); Objection of Amy Ades, ECF No. 84 ("Ades Obj."); Objection of Gary W. Sibley, ECF No. 86 ("Sibley Obj."); and Objection of Katie Sibley, ECF No. 80; Objection of Jenny Iriarte, ECF No. 81; Objection of Daniel Sibley, ECF No. 82; Objection of Janis Johnson, ECF No. 83; Objection of Sherri Johnson, ECF No. 85 (collectively, the "Sibley Form Obj."). Those who filed objections are referred to as the Objectors.

3

unabashedly revealed their true motives – the desire to extract a private settlement or attorneys' fees for themselves. *See* Guglielmo Decl., ¶¶7, 12-13. Such extortionist behavior has no place in this or any other litigation.

Given the substantial relief the Settlement provides and the Class' overwhelmingly positive response, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement and awarding attorneys' fees, expenses and Plaintiffs' incentive awards.[6]

## ARGUMENT

### I.  The Objections to the Settlement Are Meritless

#### A.  The Dubious Credibility of the Objectors Supports That Their Objections Must Be Overruled

Class-action expert Professor Samuel Issacharoff, the Reporter for the American Law Institute's Principles of the Law of Aggregate Litigation, stated:

> [C]onsumer cases are unfortunately a magnet for the cottage industry of professional objectors.  They bring objections, typically of a generic sort, that are lodged primarily for the purposes of delay and to extract (indeed, often, to extort) payment to the objector's counsel to go away.  The unfortunate game is to lodge *pro forma* objections at the trial stage, then negotiate a private resolution in order to drop the invariable notice of appeal.  Once the case has progressed beyond the trial court, there is no longer any public accountability for side payments to objectors' counsel, and the game is on.

---

[6]   *See also* Plaintiffs' Brief in Support of Final Approval of Proposed Class Settlement ("Final Approval Brief") (ECF No. 68-1) and Plaintiffs' Brief in Support of Application for Award of Attorneys' Fees, Reimbursement of Expenses and Approval of Incentive Awards ("Fee Application") (ECF No. 69-1).

Decl. of Prof. Samuel Issacharoff, ¶33, *In re Checking Account Overdraft Litig.*, No. 09-md-02036-JLK, ECF No. 1885-7 (S.D. Fla filed Sept. 16, 2011).   Prof. Issacharoff could have been commenting specifically about the cadre of professional objectors who seek to derail this Settlement for no purpose other than their own personal agenda.   Courts agree the class gains nothing by way of these self-serving objections.   *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011); *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294-95 (S.D.N.Y. 2010); *In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009); *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003).

The *bona fides* of a number of the Objectors is suspect.   To summarize, the Bochenek Objectors have not demonstrated that they are Settlement Class Members with standing to object;[7] the five Sibley Form Objectors filed nearly identical, lawyer-generated forms (*see* Guglielmo Decl., Ex. E) and two of these

---

[7]   None of the Bochenek Objectors has provided any documentary evidence that s/he purchased Nutella during the Class Period, as the Settlement and Notice require.   *See* Settlement, ¶35; May 24, 2012 Affidavit of Charlene Young (ECF No. 68-4), Ex. 1.   Accordingly, an objector who fails to support his assertion of class membership by documentary evidence has no standing to object to the proposed settlement.   *See In re Initial Pub. Offering Sec. Litig.*, Master File No. 21 MC 92(SAS), 2011 WL 3792825, at *1-2 (S.D.N.Y. Aug. 25, 2011); *Feder v. Electronic Data Systems Corp.*, 248 Fed. Appx. 579, 581 (5th Cir. 2007); *Heller v. Quovadx, Inc*., 245 Fed. Appx. 839, 842 (10th Cir. 2007).

objectors potentially have falsified their personal information;[8] Andrews demanded compensation in exchange for forgoing filing his objection (*see id.*, ¶7, Ex. B);[9] and Ades' counsel insisted a New York class be carved out and objects to the very provisions that he advocated for in a recent consumer class-action settlement in this District (*Smajlaj v. Campbell Soup Co.*, No. 10-1332 JBS/AMD) (*see id.*, ¶¶12-13).[10]   Some of these serial objectors, like Greenberg, are ideologically motivated; others routinely appeal final approval decisions and then withdraw those appeals, presumably in exchange for cash.[11]   Given the less than stellar

---

[8]     The Clerk's mailings of the Notice of Docketing of the objections to Daniel Sibley and Katie Sibley were returned as undeliverable.  *See* ECF Nos. 87-88.  Yet, the returned mail to Daniel provides a forwarding address.  *See* ECF No. 87.

[9]     Andrews has filed objections to proposed settlements and motions for attorneys' fees in two other actions, *In re Lehman Brothers Sec. and ERISA Litig.*, No. 09-md-02017 (S.D.N.Y), and *In re Tyco Sec. Litig.*, No. 02-md-1335 (D.N.H.). In both cases, Andrews agreed to withdraw his objection in exchange for a $25,000 payment.  *See Lehman*, No. 09-md-02017, ECF No. 889-9; *Tyco*, No. 02-md-01335, ECF No. 1146-17 (Guglielmo Decl., Exs. C-D).   In his objection here, Andrews demands payment for his time spent on drafting his objection or else he will file an appeal.  Andrews Obj. at 83-84.

[10]    Ades is the named plaintiff in *Ades v. Ferrero U.S.A., Inc.*, No. 11-cv-08805-VM (S.D.N.Y.), a copy-cat class action filed December 2, 2012 bringing the same claims Plaintiffs here settled.  *See Ades*, No. 11-cv-08805-VM (S.D.N.Y.), ECF No. 1.  In *Smajlaj*, class counsel (including Ades' counsel) obtained a $1,050,000 cash settlement fund and the defendant's agreement to make a labeling change to cans of defendant's reduced sodium soup products for the benefit of the class and class counsel themselves received $627,882.33 in attorneys' fees.  *See Smajlaj*, No. 10-cv-1332 (D.N.J.), ECF No. 61, ¶14.

[11]    *See, e.g., In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, No. 08-md-1999 (E.D. Wisc.), ECF Nos. 485-487 (Falkner appeal

background of the Objectors, Plaintiffs respectfully submit that the Court should

view the objections with a healthy dose of skepticism.  *See In re Initial Public*

*Offering*, 728 F. Supp. 2d at 295 n.37 ("'Federal courts are increasingly weary of

professional objectors . . . [with] objections [that] were obviously canned

objections filed by professional objectors who seek out class actions to simply

extract a fee by lodging generic, unhelpful protests.'").[12]

---

withdrawn);  *In re Wal-Mart Wage and Hour Employment Practices Litig.*, Civ.
No. 06-225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (finding that John J.
Pentz (Falkner Objectors' counsel)  . . . [has] a "documented history of filing
notices of appeal from orders approving other class action settlements, and
thereafter dismissing said appeals when they and their clients were compensated by
the settling class or counsel for the settling class"); *Hall*, No. 07-5325 JLL, 2010
WL 4053547, at *12, *17-18 (D.N.J. Oct. 13, 2010) (overruling some of same
objections Chris Langone (Bochenek Objectors' counsel) makes here); *Larson v.
AT&T Mobility, LLC*, No. 10-4349 (3d Cir.), ECF Doc. No. 003110649682
(Langone's voluntary withdrawal of appeal of *Hall* final approval decision);
*Kardonick v. JPMorgan*, No. 10-cv-23235-WMH (S.D. Fla.), ECF No. 450 (Katie
Sibley and Clark Hampe voluntary withdrawal of appeal).

[12]      Although the State of Texas has filed a number of objections recently, they
have not been very successful.  *See In re Staples Inc. Wage and Hour Employment
Practices Litig.*, CIV. A. 08-5946 (KSH), 2011 WL 5413221 (D.N.J. Nov. 4, 2011)
(overruling Texas' objections to reverting of uncashed settlement funds to the
defendant and to unduly broad scope of the release); *David v. Am. Suzuki Motor
Corp.*, No. 08-cv-22278, 2010 WL 1628362 (S.D. Fla. April 15, 2010) (overruling
Texas' objection to the coupon settlement and fee award); *In re Am. Investors Life
Ins. Co. Annuity Mkting and Sales Practices Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009)
(overruling Texas' objection that the claim review process was inadequate); *Todd
v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22,
2008) (overruling Texas' objection to the coupon settlement); *In re Enron Corp.
Sec., Deriv. & "ERISA" Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) (overruling

**B.**     **The Settlement Class Is Properly Certified Under Rule 23**

Two objectors assert the Rule 23 requirements for class certification are not met.  Hampe Obj. at 1-2; Andrews Obj. at 59-60.  Both objections are frivolous. Hampe objects that "[t]he different state groups and claims are too disparate and involve too many individualized issues to be maintained as a class," invoking the Rule 23(b)(3) predominance requirement.  Hampe Obj. at 1-2.  The Third Circuit, however, has rejected the very argument Hampe makes, concluding "***state law variations are largely 'irrelevant to certification of a settlement class***[.]'" *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 303-04 (3d Cir. 2011) (footnotes omitted).  Moreover, nationwide classes can be properly certified under the New Jersey Consumer Fraud Act ("NJCFA").  *See generally Mercedes-Benz Tele Aid Contract Litig*., 267 F.R.D. 113 (D.N.J. 2010).  Here in certifying the class for preliminary approval, the Court noted that common issues clearly predominate over any individual issues, including whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of Nutella; whether Defendant represented that Nutella has characteristics, benefits, uses or qualities that it does not have; whether Defendant's acts and practices in connection with the promotion, marketing,

---

Texas' objection to the fee award); *but see True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) (Texas' objections upheld).

advertising, packaging, labeling, distribution and sale of Nutella violated the NJCFA. *See* ECF No. 67, ¶3. Thus, the predominance requirement plainly is met.

Andrews' claim that his objections demonstrate Class Counsel are not adequate to represent the Class under Rule 23(a)(4) is equally specious. Andrews Obj. at 59-60. This Court has had the opportunity to witness first hand the work of Class Counsel, and it has ***twice*** found Class Counsel adequate to represent the Class. ECF Nos. 41, 67. Further highlighting the lack of merit of Andrews' objection is the fact that Andrews extols California counsel and the settlement they achieved for the California class. Andrews Obj. at 91-95. *See also* Guglielmo Decl., Ex. A. The irony of this is demonstrated by the fact that "***the California settlement contains substantive provisions, notice, and a fee structure that is identical to this Settlement***" – which Class Counsel drafted and entered into more than a week prior to the California settlement. *See* Guglielmo Decl., ¶6. ***Indeed, much of the language in California settlement was simply lifted from the Settlement.*** *See id*. Far from deserving congratulations for their work on this case (*see id*., Ex. A), California counsel actually attempted to hinder Class Counsel's efforts to participate in joint discovery matters, did not conduct any third-party discovery as Plaintiffs have, walked out of mediation before Judge Politan, and did not participate in negotiating or drafting the substantive provisions of the

9

settlement agreement. *See id.*, ¶¶5-6. As such, there is no basis to question the adequacy of Class Counsel or deny class certification for settlement purposes.

### C.      The Notice Program Comports with Due Process and Rule 23

This Court previously approved the Notice Program. ECF No. 67, ¶5. Objectors criticize both the reach and the content of the Notice. Sibley Obj. at 1-2; Sibley Form Obj. at 1; Andrews Obj. at 57-59, 61-62; Ades Obj. at 7. On its face, this objection rings hollow because each Objector that has challenged the Settlement and requested fee has done so, presumably, based upon reviewing the Notice. *Id.* More importantly, the Objectors do not, and cannot, articulate how the Court-approved methods of providing notice to the Class were deficient.

When assessing reasonableness, the law merely requires "'adequate notice,' not perfect notice." *Uhl v. Thoroughbred Tech. & Telecomms. Inc.*, No. IP00-1232-C-B/S, 2001 WL 987840, at *20 (D. Ind. Aug. 28, 2001), *aff'd*, 309 F.3d 978 (7th Cir. 2002)). In *Gottlieb v. Wiles*, an objector to a class action settlement argued that the settlement notice "was not the best notice practicable under the circumstances" because, among other things, "it did not assure individual notice." *Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993), *overruled in part on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). The Tenth Circuit rejected this argument, holding that "there is no such rigid requirement under Rule 23(e)." *Id.* (distinguishing Rule 23(c) from Rule 23(e)).

10

The Notice provided here was clearly reasonable and adequate under Third Circuit precedent.   The Summary Notice was published in the very same magazines where the allegedly misleading "advertorials" were published. *Compare* Supp. Young Aff., ¶3 *with* Class Action Complaint ("Compl.") (ECF No. 1), ¶¶50, 62.  The obvious purpose of publishing the Notice in the same magazines was to inform as many Nutella consumers who saw the offending advertisements as possible of the Settlement.   In addition to publishing the Notice where an overwhelming majority of the affected Settlement Class Members would be reached, the Claims Administrator also provided direct mail notice to 735 individuals who contacted the Claims Administrator; internet notification through millions of banner advertisements on Facebook and 24/7 Real Media Network – Parenting Channel, which provided a direct link to the Settlement Website; establishing a Settlement Website that has been visited more than one million times; and a toll-free number for Settlement Class Members to call with questions that received more than 1,500 calls.  *See* Supp. Young Aff., ¶¶3, 6-8.  As a result, more than 200,000 claims have been filed as of June 28, 2012 (with only one week until the July 5, 2012 claims filing deadline).  *See* Supp. Young Aff., ¶10.  This is a phenomenal claim rate, particularly where mailing addresses or other identifying information for the Class is unavailable through reasonable efforts, and supports that the Notice Program is the best practicable under the circumstances.   The

11

Objectors have not identified a single defect in the Court-approved methods used to notify the Class of the Settlement.  Consequently, this basis for objecting should be overruled.  *See In re "Agent Orange" Product Liab. Litig.*, 818 F.2d 145, 169 (2d Cir. 1987).

Objections relating to the content of the Notice are similarly lacking.  "Rule 23(e) does not require that a notice contain every specific detail related to the settlement."  *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, No. 04-5184 (CCC),  2012 WL 1071240, at *14 (D.N.J. Mar. 30, 2012).  The Court-approved Notice advises the Class that "Ferrero agreed to modify its labeling of Nutella in a way that will make certain nutritional information for the product more prominent, modify certain marketing statements regarding Nutella, create new television advertisements for Nutella, and modify the website for Nutella (www.nutellausa.com)."  Affidavit of Charlene Young, Ex. 1, ECF No. 68-4.  The Notice also directs the Class to www.NutellaClassActionSettlement.com, where the Settlement, with more detailed information, is posted.  *Id*.  This is clearly sufficient under Third Circuit authority.  *See Ins. Brokerage*, 2012 WL 1071240, at *14 (overruling objection that notice was inadequate where details were provided in the settlement agreement).[13]  Thus, the Objectors fail to refute the fact that the

---

[13]     The hypocrisy of Ades' objection to the Notice is evidenced by the fact that her counsel in the recent *Campbell Soup* settlement did not include the very details

Notice Program is the best practicable notice under the circumstances, satisfying

both due process and Rule 23.

### D.    The Cash Settlement Amount Provides a Substantial Benefit to the Class in Light of Significant Litigation Risk

Several Objectors assert that the $2.5 million Cash Settlement Amount is too

little to compensate the Class.  Ades Obj. at 4, 6; Andrews Obj. at 14-31; Sibley

Obj. at 5-6.  Yet, as a general rule, broad objections that a settlement somehow

could have been better are not a basis upon which to deny approval.  Indeed, that

some objectors "would prefer to receive greater monetary benefits under the terms

of the settlement has no bearing on the reasonableness of the Settlement as a

whole."  *Hall*, 2010 WL 4053547, at *10.  Objections seeking broader relief fail to

account for the compromise nature of settlements.  *McLennan*, 2012 WL 686020,

at *8.  As one court aptly put it, the possibility "that the settlement could have been

better . . . does not mean the settlement presented was not fair, reasonable or

adequate," because "[s]ettlement is the offspring of compromise; the question we

address is not whether the final product could be prettier, smarter or snazzier, but

whether it is fair, adequate and free from collusion."  *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1027 (9th Cir. 1998).  Even if a proposed settlement amounts to

---

Ades      now      urges      are      necessary      here.      *See*
https://reducedsodiumsoupsettlement.com/Portals/0/Documents/Smajlaj%20v%20
Campbells%20Soup_LONG%20FORM%20NOTICE_v3.pdf.

only "a fraction" of the potential recovery, that does not, "in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re AT & T Corp*., 455 F.3d 160, 170 (3d Cir. 2006).  Rather, the relief "'must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*.'"  *Id*.

The Settlement here more than satisfies that requirement.  Settlement Class Members are entitled to their *pro rata* share of the $2.5 million Cash Settlement Amount.  *See* Supp. Young Aff., ¶9.  Had litigation continued, Plaintiffs would have sought a percentage of the purchase price since the measure of damages under the NJCFA is the difference in value between the product received and the product promised.  *See, e.g., Hammer v. Vital Pharmaceuticals, Inc*., No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012).  Here, Settlement Class Members will receive approximately $1.30 per jar (up to a maximum recovery for five jars purchased), which represents between 20% and 37% of the purchase price for a 26-ounce jar and 13-ounce jar of Nutella, respectively.  Had the parties proceeded to a judgment, there would be no guarantee that they would come close to achieving this phenomenal result.  Given that this recovery is clearly within the range of reasonableness and well above that achieved in other settlements it should be approved by the Court.  *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp*., No. 03-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (approving

14

11.4% of total damages noting the "percentage compares favorably with the settlements reached in other complex action lawsuits."); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) (approving between 9.3% and 13.9% of damages as "consistent with those approved in other complex class action cases."); *In re Prudential Securities, Inc. L.P. Litig.*, MDL No. 1005, 1995 WL 798907 (S.D.N.Y. 1995) (approving settlement of between 1.6% and 5% of claimed damages). *A fortiori*, objections to the amount of the Cash Settlement Amount must be overruled.

### E.    The Injunctive Relief Provides Significant Monetary Value to the Class

Many of the Objectors baldly claim that the Injunctive Relief has no monetary value.  Falkner Obj. at 2-3; Bochenek Obj. at 9; Greenberg Obj. at 12; Hampe Obj. at 1; Sibley Obj. at 5-7.  Yet, they offer absolutely ***no evidence*** to support their assertion.  On the other hand, using Ferrero's own sales data and other documents, Plaintiffs' expert R. Larry Johnson opines that the Injunctive Relief, conservatively, is worth between $6.5 million and $41.7 million.  *See generally* Johnson Report.  As will be discussed further below in connection with Class Counsel's application for attorneys' fees, this Injunctive Relief clearly supports the requested fees.  *See, e.g., Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-1022(DMC), 2012 WL 664827, at *1, 5 (D.N.J. Feb. 28, 2012)

15

(awarding attorneys' fees on corporate governance reforms); *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099(DMC), 2010 WL 1257722, at *16-17 (D.N.J. Mar. 26, 2010) (awarding attorneys' fees where additional disclosures to shareholders achieved); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (awarding attorneys' fees where injunctive relief was valued at between $26 and $38 million).   Thus, the unsubstantiated objections that the Injunctive Relief is valueless, therefore, must be overruled.

### F.   The Injunctive Relief Is a Necessary Component of the Settlement

Greenberg objects that the injunctive changes are unnecessary.   Greenberg Obj. at 7-11.   This is nonsensical given that the Injunctive Relief remedies the primary misrepresentation.   Imagine the legion of objectors who would object to a settlement that failed to change the misleading practices complained of in the Complaint.   Greenberg simply is not entitled to re-write the Settlement.   *See In re Diet Drugs Products Liab. Litig.*, 553 F. Supp. 2d 442, 490 (E.D. Pa. 2008).

Greenberg also objects that private parties are not entitled to injunctive relief under the NJCFA and that this Settlement is similar to a coupon settlement. Greenberg Obj. at 9, 11.   These assertions are wrong.   First, while the NJCFA "permits only the Attorney General to bring actions *for purely injunctive relief*," a private plaintiff may bring a claim, including a request for equitable relief, under the NJCFA where she can colorably allege ascertainable loss, *Weinberg v. Sprint*

16

*Corp.*, 173 N.J. 233, 250-51 (2002), which Plaintiffs most certainly do. Compl., ¶99. Second, Greenberg simply ignores that Plaintiffs obtained cash relief for the Class, and thus, the Class is not obligated to do future business with Ferrero to obtain relief as in a coupon settlement. Greenberg's tactic of divorcing consideration of the injunctive relief from the monetary remedy is improper. "To prevail on their complaints, objectors in turn must show how the settlement, *viewed as a whole*, fails to satisfy the criteria for settlement approval." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 330 (N.D. Ga. 1993). It is "the Court's duty is to evaluate the settlement *as a whole*, and determine if the settlement *as a whole* is fair, reasonable, and adequate." *McBean v. City of New York*, 233 F.R.D. 377, 382 (S.D.N.Y. 2006).

Ades, Gary Sibley and the Sibley Form Objectors posit that Ferrero would have changed its advertising eventually. Ades Obj. at 5; Sibley at 6; Sibley Form Obj. at 2. This is pure speculation and doesn't address the fact that the settlement requires them to do so. Given that Ferrero believes its advertising was truthful and that it spent millions of dollars on an ad campaign that resulted in a substantial jump in the Nutella's net sales growth rate, Ferrero had no incentive to change its advertising and was unlikely to do so. Sibley and the Sibley Form Objectors also object that the "injunctive relief is really worthless as all Nutella is doing is to agree to do what they were supposed to do anyway." Sibley Obj. at 5, 6; Sibley

17

Form Obj. at 2.  This is nonsensical.  The changes have been imposed precisely because Plaintiffs allege Ferrero **has not been law abiding**.  Moreover, the changes to the advertising were reviewed and agreed to by Class Counsel and Plaintiffs' expert Peter Wright, who the Objectors cannot discredit.  Thus, these meritless objections should be overruled.

### G.    The Injunctive Relief Provides Substantive Benefits to the Class

Many of the Objectors and the State of Texas claim that the Injunctive Relief provides no substantive benefits to the Class, challenging various specifics of the relief obtained.  Cloudt Ltr. at 3-4; Bochenek Obj. at 9; Greenberg Obj. at 12-16; Ades at 4-5; Sibley Obj. at 5-6; Andrews Obj. at 68-69.  However, Plaintiffs' expert Peter Wright opined:

> The changes Ferrero is making in its labeling of Nutella, television advertising of Nutella and website for Nutella will significantly correct prior misimpressions in consumers' minds, if any, about Nutella's nutritional value and role in a healthy breakfast that were created by Ferrero's marketing practices prior to the Settlement Agreement.

Wright Decl., ¶13.  Thus, according to Mr. Wright's uncontroverted declaration, the Settlement specifically addresses Ferrero's deceptive messaging – on Nutella's labels, in Ferrero's television commercials and on its website by its paid nutritionist.  Such relief is consistent with the Complaint, which sought damages as well as an "order enjoining Ferrero" from employing its deceptive messaging in its

18

advertising and labeling and an "order compelling Ferrero to conduct a corrective advertising campaign." Compl., ¶¶113, 114, 119. Plaintiffs, therefore, have achieved the relief sought, not only obtaining recompense for past harm but also imposing measures to forestall continuing and future harm. That the Objectors would prefer different injunctive terms "does not, without more, suggest that the terms reached are unreasonable or unfair." *Hall*, 2010 WL 4053547, at *13.

### 1.    Revised Nutella Label

The State of Texas and others Objectors argue that the new label changes are not meaningful because the new front-of-the-label information is already on the back of the package, Falkner Obj. at 3; Greenberg Obj. at 13; Ades Obj. at 4; Sibley Obj. at 6; Sibley Form Obj. at 1-2; Cloudt Ltr. at 2.[14] However, Plaintiffs' expert clearly disagrees with this position:

> [T]he changes Ferrero proposes for its labeling, television advertising and website are likely, *in toto*, to significantly decrease the number of consumers who are misled about Nutella's nutritional value and about its role as part of a breakfast if added to other already-nutritious foods. From a communication standpoint, the proposed changes are substantial and provide significant benefits.

---

[14]    Texas' suggestion of a warning label (Cloudt Ltr. at 2) is the proper function the U.S. Food and Drug Administration, not the courts. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011) (cause of action that would impose a labeling requirement that is not identical to the federal requirement is preempted); *Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (finding that a requirement of warning on milk products regarding lactose intolerance exceeds the federal requirements and is preempted).

19

Wright Decl., ¶14. *Cf. Williams v. Gerber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008) (consumers are not required to look to the ingredient list to discern whether the front of the label is misleading). The Objectors fail to refute Wright's expert opinion. *See infra*, Sec. I.G.4.

The Objectors' other miscellaneous criticisms about the labeling changes also fail. Although Ferrero may choose to remove its new slogan entirely, it may not simply revert to using the old slogan, as Greenberg and Andrews seem to assume. Greenberg Obj. at 12; Andrews Obj. at 69. Ades objects that Ferrero is not obligated to have the Nutella with the old labels removed from store shelves. Ades Obj. at 5. As Ades' counsel surely knows from the *Campbell Soup* settlement, which did not require removal of the soup from store shelves, Ferrero does not have any control over store inventories.

### 2. <u>Revised Television Advertising</u>

Greenberg, Ades, and the State of Texas disparage the revised television advertising campaign because Plaintiffs cannot mandate the content of the new commercials and Class Counsel's advice is merely advisory. Greenberg Obj. at 12-13; Ades Obj. at 5; Cloudt Ltr. at 2. The argument is nonsensical and moot in any event as Plaintiffs and Ferrero have agreed to the language to be used in the new commercials. *See* Guglielmo Decl., Ex. F. Notably, the language is the same language Wright reviewed and stated was corrective. *See* Wright Decl., ¶¶5, 13-

14.  Indeed, Plaintiffs' expert has opined that the "television ads avoid making an explicit or implied claim that Nutella is in and of itself a nutritious addition to a breakfast.  They instead confine the claim to the more valid representation that Nutella can be added to an already-nutritious breakfast to make it tastier and more appealing to family members," *id*. at 6, and also concludes the marketing "will not in the future mislead reasonable consumers regarding Nutella's nutritional value and role in a healthy breakfast."[15]  *Id*. at 5.

### 3.   Website Revisions

Greenberg  objects  that  the  website  information  was  not  offensive. Greenberg Obj. at 13.  Greenberg's objection does not go to the adequacy of the Settlement.  Indeed, one may assume that Greenberg simply does not agree with the litigation itself, which is not a valid basis for objecting.  The Settlement requires removal of web pages that linked Nutella with information relating to a balanced diet so as not to mislead consumers into thinking that Nutella itself is healthy.  Settlement Ex. H.  The Settlement also provides that "[a]ll content referencing or attributable to Ms. Connie Evers will be removed" from the Nutella website.  Settlement, ¶42.A.  The content removed (*see* Guglielmo Decl., Ex. G)

---

[15]    Moreover,  Ferrero  would  have  no  incentive  to  ignore  Class  Counsel's comments for if the new ads (which will be under higher scrutiny after this lawsuit) are misleading, consumers could sue Ferrero again for its new ad campaign.  Similarly, if Ferrero were to re-run the deceptive messaging at issue after the three year prohibition (Ades Obj. at 5), consumers simply could sue again.

shows Ms. Evers, Ferrero's nutritionist spokesperson, claiming that Nutella as *part of* a balanced breakfast, thereby misleading the Class as to the nutritional value of Nutella, as Plaintiffs allege.   While Greenberg obviously misses the import of deleting the link between Nutella and a balanced breakfast from the Nutella website, Plaintiffs' expert opined the website revisions as part of the injunctive modifications as a whole "will significantly correct prior misimpressions in consumers' minds, if any, about Nutella's nutritional value and role in a healthy breakfast that were created by Ferrero's marketing practices prior to the Settlement Agreement."  Wright Decl., ¶13.

The State of Texas objects to the website modifications only to the extent that the content to be removed from the Nutella website was not specifically alleged in the Complaint.  Cloudt Ltr. at 3.  Texas appears to argue that because the Complaint did not address each specific form of deceptive advertising Plaintiffs are barred from enjoying the benefit of the website revisions achieved in the Settlement.  Given that Texas does not appear to dispute that the Nutella website should be revised, its objection has no bearing on whether the Settlement is fair, reasonable and adequate.  It, therefore, should be overruled.

### 4.    Objections to Plaintiffs' Expert Peter Wright Lack Merit

Greenberg objects that Wright fails to satisfy Fed. R. Evid. 702 and asserts that his testimony should be excluded under *Daubert v. Merrell Dow*

22

*Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  First, review of Wright's qualifications evidences that he qualifies as an expert under Fed. R. Evid. 702.  Wright Decl., ¶¶1-3 and Ex. A.  Second, *Daubert* does not apply at a fairness hearing.  In *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 636-37 (6th Cir. 2007), the Sixth Circuit found the district court did not abuse its discretion in considering expert evidence at a fairness hearing, explaining:

> Also deficient is the objection that the reports submitted by the parties' independent financial experts did not satisfy Evidence Rule 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.* . . . .  The Rule 702 argument, again, overlooks the differences between a full trial and a fairness hearing.  In a trial, the judge must strictly screen expert opinions for "evidentiary relevance and reliability" because a jury often has difficulty assessing such evidence. . . .  In a fairness hearing, the judge does not resolve the parties' factual disputes but merely ensures that the disputes are real and that the settlement fairly and reasonably resolves the parties' differences.  The *Daubert* objection suffers from the same problem, and what is more, this screening requirement remains "a flexible one" . . . and the objectors simply have not shown how district courts abused their discretion in considering these financial reports. . . .  "The qualifications and experience of [the experts] . . . attest to their ability to conduct financial and actuarial analysis."

*See also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2012 WL 651727, at *20 (N.D. Ill. Feb. 28, 2012) ("the Federal Rules of Evidence and the requirements of *Daubert* and its progeny do not apply at a fairness hearing – and similarly do not apply at a hearing on fees and costs . . . ."); 29 Fed. Prac. & Proc.

23

Evid. §6266 n.80.1.1, ("*Daubert* did not apply to expert testimony offered at hearing on the fairness of proposed settlement of class action . . .").  The Third Circuit also does not require a rigorous *Daubert* analysis at the fairness hearing stage.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538-39 (3d Cir. 2004) (finding no error in the district court's analysis of the expert report, where the district court did not perform a rigorous *Daubert* inquiry).

Third, even assuming *arguendo*, *Daubert* does apply, Greenberg offers no basis other than a naked assertion in challenging Wright's opinions, the materials he considered, and the methods he employed.  For example, Greenberg objects that Wright's opinion is insufficient because survey evidence is required.  Greenberg Obj. at 15.  Again, the argument presupposes that *Daubert* applies.  Yet, even under *Daubert*, survey evidence is not required.  Wright's experience speaks for itself and supports the reliability of his conclusions.

The Bochenek Objectors proffer the Declaration of Dr. Yoni Freedhoff (ECF No. 76-1), who asserts that the new slogan is misleading and states that he believes serving the equivalent of a chocolate bar to children with breakfast is not healthy. Dr. Freehoff, apparently, is a medical doctor in Canada.  However, the Bochenek Objectors do not purport to be putting Dr. Freehoff forward as an advertising or marketing expert under Fed. R. Evid. 702 and do not provide Plaintiffs with any information that would allow them to assess Dr. Freehoff's qualifications.   In

24

contrast, Plaintiffs' expert Peter Wright is a Ph.D., a professor at the University of Oregon, an expert on consumer behavior and marketing practices, and over the past four decades has published numerous articles and has testified as an expert in Federal and State Court and before the Federal Trade Commission.  Wright Decl., ¶¶1-3 and Ex. A.  Moreover, Wright reviewed numerous documents in developing his opinions.  *Id.*, ¶5.  Based on his experience and work in this case, Wright specifically opined that:

> As a result of the Settlement Agreement, Ferrero will have created a multi-media campaign that is highly integrated. This integration is of great benefit to consumers. Each medium by itself delivers the same basic message in a clear, conspicuous, readily comprehended way, and the combined effect of a consumer's exposures to these redundancies across the different media (ads, labels, website) is likely to substantially enhance consumer understanding of how to do effective nutritional-beneficial breakfast planning.

*Id.*, ¶14.  Dr. Freedhoff simply ignores Wright's opinions and the multi-faceted nature of the modifications that make the sugar and fat content of Nutella even more prominent on the label.

Ades objects that Wright failed to discuss certain issues.  Ades Obj. at 8-9.  That Wright did not explicitly discuss the issues that Ades raises does not mean that Wright did not consider those issues.  Wright reviewed the Settlement along with the documents referenced in the "Materials Reviewed" section of his Report.  Wright Decl., ¶5.  Wright addresses the issues Ades raises by rendering his expert

opinion that – based on his review of such materials and his extensive experience and background in this field – the new advertising will not mislead consumers in the future regarding the nutritional value of Nutella.  *Id.*, ¶12.

Simply put, the Objectors fail to proffer any evidence rebutting Wright's opinions, and thus, these objections must be overruled.

### H.   The Benefit of the Injunctive Relief Runs to the Class

Although the Injunctive Relief certainly benefits the public at large, it also is clearly a material benefit to the Class, despite objections to the contrary.  Falkner Obj. at 3; Greenberg Obj. at 5-11.  Through the Settlement, the Class now has an accurate description of Nutella, and, as such, the Injunctive Relief confers a direct and valuable benefit on the Class.  *See generally* Wright Decl.; Johnson Report. *See also McCoy*, 569 F. Supp. 2d at 478 (finding "Class Members reap a sizeable financial benefit from the injunctive relief provided in this Settlement"); *First State Orthopaedics v. Concentra, Inc*., 534 F. Supp. 2d 500, 521-22 (E.D. Pa. 2007) (finding settlement cures objectionable practices plaintiffs complained of and provides real benefits to the class); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 149 (D.N.J. 2004) (rejecting objection that injunctive relief benefited only the public at large, recognizing that "[c]ourts have previously approved settlements that propose injunctive relief that will benefit the class members and the public at large."); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (Third Circuit

26

found no abuse of discretion in approval of derivative action settlement mandating certain corporate governance changes that addressed the essence of plaintiffs' grievances).  Thus, this objection must be overruled.

## I.    The Settlement Is Procedurally Fair

Several Objectors claim the Settlement bears all the indicia of collusion under *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), and thus lacks the fairness required for final approval.  *See* Falkner Obj. at 1-2; Greenberg Obj. at 20-27; Bochenek Obj. at 9; Andrews Obj. at 72-75.  Those objections are not well founded.  The Objectors completely disregard that this Settlement was overseen by a well-respected neutral mediator and former Judge of this District, the late Nicholas J. Politan.[16]  Settlement, ¶15.  Judge Politan oversaw the parties' mediation, which took place on October 10, 2011 in New York, New York, and on November 2, 2011 in West Palm Beach, Florida.  *Id*.; *see also* Guglielmo Decl., ¶3.  Moreover, Judge Politan also oversaw the negotiation of the attorneys' fees, which were negotiated separately from the substantive provisions. *See* Guglielmo Decl., ¶4.  Thus, the parties "'obviated the danger of an actual or apparent conflict of interest on the part of class counsel by negotiating in a manner

---

[16]    Sadly, shortly after the Settlement was reached, Judge Politan passed away on February 20, 2012.  Otherwise a declaration from Judge Politan himself would be provided.  *See* Andrews Obj. at 56, 67, 70 (criticizing counsel for lack of mediator declaration).

27

*expressly recommended* by the Third Circuit ….'"  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 335 (3d Cir. 1998).  While not dispositive, the presence of a mediator supports a finding of non-collusion.  *See, e.g., In re HP Laser Printer Litig.*, No. SACV 07-667, 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31, 2011).

With respect to the approval of the settlement agreement in *Bluetooth*, the Ninth Circuit expressed the need to be vigilant for collusion between class counsel and the defendant, identifying several non-exclusive signs of potential collusion, such as when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel is amply rewarded; the defendant agrees to a "clear sailing" arrangement for the payment of attorneys' fees; or where fees not awarded revert to the defendant rather than being added to the class fund.  *Bluetooth*, 654 F.3d at 947.

There is simply no evidence that any of the provisions the Objectors complain of demonstrate collusive behavior between the parties.  This Settlement stands in sharp contrast to *Bluetooth*, where the settlement provided ***no monetary recovery to the class*** and did not include any significant injunctive relief.  Not surprisingly, the Objectors ignore these important material factual distinctions. *See, e.g., Amunrud v. Spring Commc'ns Co. L.P.*, No. CV 10-57, 2012 WL 443751 at *3-4 (D. Mont. Feb. 10, 2012) (where settlement provided "real and meaningful

28

cash compensation to class members," in contrast to the settlement in *Bluetooth*, clear sailing provision and reverter did not amount to evidence of collusion); *Weeks v. Kellogg Co.*, No. 09-cv-8102, ECF No. 157 at 45 (C.D. Cal. Nov. 23, 2011) (distinguishing *Bluetooth*).

A defendant's "agreement not to oppose an attorneys' fee award up to a specified amount, as determined by the Court, … is entirely proper."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997).   Indeed, such a provision prevents objectors from trying to hold up a settlement in the hopes of extracting a legal fee.  Further, courts also approve of allowing an unapproved fee to revert to defendant.  *See, e.g., Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995).  Notably, only the fee requested for achieving the Injunctive Relief reverts to Ferrero; any portion of the fee requested from the Cash Settlement Amount not awarded to Class Counsel ***will not revert*** to Ferrero.   Settlement, ¶¶49-50.[17]   When the Court takes into consideration that the Settlement ***as a whole*** is conservatively valued at between $9 million and $44.2 million, Class Counsel will not receive an amount that is

---

[17]      Again, demonstrating the frivolous nature of Ades' objection, her counsel in the *Campbell Soup* Settlement obtained an injunctive fee award – described as the "Non-Fund Benefit Class Counsel Fee."   *See Smajlaj*, Campbell's Settlement Agreement, ¶12.2, ECF No. 58-3.

disproportionate to the benefits the Class receives.  In short, there is no evidence of collusion, and this baseless objection should be overruled**.**

### J.    A Quick Pay Provision Is Not Improper

The objections that the Settlement's quick pay provision precludes a finding of fairness are unfounded.  *See* Bochenek Obj. at 9; Greenberg Obj. at 27-29; Ades Obj. at 7; Andrews Obj. at 55.  Indeed, courts generally reject objections against quick pay provisions and approve payments to counsel within days of class action settlements because they recognize that counsel often litigate and finance these cases for years without any compensation whatsoever.  *See, e.g., In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 283–85 (3d Cir. 2009) (affirming $29.95 million fee award and noting that the settlement agreement required plaintiffs' counsel to reimburse the already-paid fee award, if that award were reversed on appeal); *In re NASDAQ Market–Makers Antitrust Litig*., 187 F.R.D. 465, 479 (S.D.N.Y.1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. MDL 3:07-md-1827, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("[f]ederal courts, including this court and others in the district, routinely approve settlements that provide for [quick pay] fees prior to final disposition in complex class actions.").  In fact, many commentators regard the "wide-spread use" of quick pay as a useful tool to

30

"reduce the 'holdout tax' that blackmail objectors can extract in class action litigation." Brian T. Fitzpatrick, THE END OF OBJECTOR BLACKMAIL?, 62 Vand. L. Rev. 1623, 1625-26 (Nov. 2009). This common sense proposition has not been lost on litigants, as illustrated by the fact that more than one third of all class action settlements in 2006 included quick-pay provisions. *Id.* at 1626.

Further, the Settlement provides adequate safeguards in the event any attorneys' fees award is reversed. *See* Settlement, ¶52. Greenberg objects that the attorneys' fee award should be held in escrow to earn interest on behalf of the Class in the event of an appeal. Greenberg Obj. at 28. This would simply incentivize objectors to object in the hope of a payday in the future. In any event, the Settlement plainly provides that any refund of an attorneys' fee award would be paid with interest. *See* Settlement, ¶52. In sum, the quick pay provision does not support a finding of collusion in the negotiation of this Settlement.

### K.   The Reaction of the Class Supports Final Approval

There are likely millions of Settlement Class Members, more than 200,000 of whom have submitted a claim. *See* Supp. Young Aff., ¶10. Only six putative Settlement Class Members have opted out – only 0.003% of those who have filed a claim. *Id.*, ¶11. Only 16 putative Settlement Class Members have filed a total of seven objections, which represents 0.008% of those who have filed a claim. Further, only one state official who received notice under 28 U.S.C §1715 has

31

objected to the Settlement.  Cloudt Ltr.  "The fact that a large number of class members have already submitted claim forms demonstrates 'considerable satisfaction with the results of the litigation.'"  *Gates v. Rohm And Haas Co*., Civil Action No.06-1743, 2008 WL 4078456, at *4 (E.D. Pa. Aug. 22, 2008).

Plaintiffs acknowledge that a low number of opt outs and objections is not necessarily indicative of support for the Settlement, *see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995), as two objectors state.  Greenberg Obj. at 34-36; Andrews Obj. at 77-80.[18] Despite the fact that the credibility of all the objectors is dubious, Plaintiffs address each objection such that the Court may consider its validity and account for the objectors' views in weighing the second *Girsh* factor.  *See Myers v. MedQuist, Inc*., Civil No. 05-4608(JBS), 2009 WL 900787, at *12 (D.N.J. Mar. 31, 2009) (determining second *Girsh* factor weighed in favor of approval after scrutinizing objections and accounting for the objectors' views).  In *Varacallo v. Mass. Mutual Life Ins. Co*., 226 F.R.D. 207, 237, 251 (D.N.J. 2005), Judge Linares held where .06% of class members opted out of the settlement before him, and .003% raised

---

[18]     Greenberg surmises without support that the lack of objectors is due to the difficulty in submitting an objection.  Greenberg Obj. at 36-37; Andrews Obj. at 77-80.  It is little more onerous to hit the print button and adhere a stamp to an envelope than to hit the send button on the proposed electronic submission of an objection.  This objection simply does not bear upon the fairness of the Settlement.

32

objections, these results were "extremely low" and favored approval of the settlement.  Here the percentages are even more dramatic and support approval. *See Careccio v. BMW of N. Am. LLC*, CIV. A. 08-2619, 2010 WL 1752347, at *4 (D.N.J. Apr. 29, 2010) (finding second *Girsh* factor strongly favors approval where .000074% of those notified objected, and .00014% opted out).

**L.    The Other Miscellaneous Objections to the Fairness of the Settlement Should Be Overruled**

**Cap on Claims.**  Hampe and Ades complain that the Settlement is unfair where it caps the refund a Settlement Class Member can receive, regardless of the number of jars of Nutella that the Settlement Class Member purchased during the Class Period.  Hampe Obj. at 1; Ades Obj. at 6.  Instead of being unfair, this feature ensures fairness by limiting a refund to a reasonable number of jars – ***without even seeking proof of purchase*** – thereby ensuring a higher percentage recovery for each Settlement Class Member than if Settlement Class Members were entitled to submit claims for an unlimited number of jars.  To allow claims for an unlimited number of jars, Settlement Class Member likely would have been required to submit receipts as proof of purchase.  This would have precluded many Settlement Class Member from recovering in the Settlement, since few households keep itemized grocery receipts over the long term.  The hard-fought compromise reflected in the Settlement, which allows claimants to recover up to $20 without

33

proof of Class membership or out-of-pocket expenses, follows an approach recognized by the *Manual for Complex Litigation (Fourth)* ("MCL (Fourth)"), §21.66 (2004) ("A default award may be appropriate for those who can establish membership in the class but cannot, or prefer not to, submit detailed claims. Typically, such an award would be at the low end of the range of expected claims.").[19]  Accordingly, this objection is without merit.

   *Cy Pres* **Award Provision.**  Hampe objects that the notice and Settlement are insufficient because "there are too many loose ends concerning what happens to overflow settlement funds."  Hampe Obj. at 1.  Several objectors also challenge the Settlement's *cy pres* award provision for any unclaimed funds as inappropriate. *See* Sibley Obj. at 2-5; Sibley Form Obj. at 1-2 (money should go to the class instead of "unnamed charities"); Andrews Obj. at 53-54.  These objections are moot because there will be no undistributed funds as a result of the excellent claims rate. *See* Supp. Young Aff., ¶9.

   **Class Definition.**  Andrews objects that the definition of Settlement Class Member is unfair because the Class only includes individuals and not organizations (like restaurants) that might have purchased Nutella.  Andrews Obj. at 32-38.

---

[19]    Notably, the settlement recently advocated for by Ades' counsel in the Campbell's soup settlement, employed a similar cap of on a class member's recovery to $5 if class members purchased less than 10 cans of soup and a cap of $10 per 10 cans or more of soup.  *See Smajlaj*, Campbell's Settlement Agreement, ¶4.3, ECF No. 58-3.

Given that organizations are not members of the Class, they have no standing to object, thus there is no basis for finding this Settlement to be unfair. *In re Initial Pub. Offering Sec. Litig*., Master File No. 21 MC 92(SAS), 2011 WL 3792825, at *1-2 (S.D.N.Y. Aug. 25, 2011).

**Additional Claims.** Andrews objects that Plaintiffs failed to plead a violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. 45. Andrews Obj. at 44-48. This objection is baseless as the FTCA does not create a private cause of action. *See, e.g., Skypala v. Mortgage Electronic Registration Sys. Inc*., No. 08-5867, 2009 WL 2762247, at *1 n. 1 (D.N.J. Sept.1, 2009) (collecting cases).

**CAFA Notice.** Andrews complains that he has not seen proof that Ferrero sent CAFA notice. Andrews Obj. at 56. Andrews has no standing to object to CAFA notice. In any event, the Objection by the State of Texas confirms that CAFA Notice was provided. *See* Cloudt Ltr. at 1. Notably, Texas does not object to the CAFA Notice.

**Objection Procedures.** Hampe objects to any requirements or procedures to object that are not contained in the class notice. Hampe Obj. at 1. Not only does this objection ring hollow since Hampe has managed to object, there are no requirements pertaining to objections that are not contained in the class notice.

**Second Opt-Out Opportunity.** Andrews friviliously objects that "New Rule 23(e)(3)" requires a second opt-out opportunity. Andrews Obj. at 61. Andrews means to reference Rule 23(e)(4), which is inapplicable because this case has not been "previously certified under Rule 23(b)(3)." Fed. R. Civ. P. 23(e)(4).

**Response to Objections.** To allay Andrews' concern that mailing Plaintiffs' response to these objections is unfair, Andrews Obj. at 52, Class Counsel confirm they will email or overnight this response to all objectors or their counsel.

For the foregoing reason, all objections to the Settlement should be overruled and the Settlement approved as fair, adequate and reasonable.

## II. The Objections to Attorneys' Fees, Expenses and Incentive Awards Are Without Merit

Objectors' opposition to the award of attorneys' fees rests upon incorrect applications of law, baseless interpretations of the work performed by Class Counsel, and disingenuous attacks on the efforts and achievements of Class Counsel.[20] For example, in their haste to reverse engineer an unjust result that would in no way benefit the Class they claim to be protecting, the Objectors misstate the monetary and injunctive benefits delivered by Class Counsel, going so

---

[20] The objections to the Fee Application focus on Class Counsel's request for fees and do not demonstrate that any of the claimed expenses are improper. Accordingly, that request should be granted as fair and reasonable.

36

far as to argue, without any basis in the record or otherwise, that the Injunctive Relief is valueless.  The Objectors also misapply relevant precedent – ignoring that Class Counsel's fee should be assessed based on a percentage of the ***total benefit*** conferred upon the Class.  These wild attacks, aimed at trying to manufacture a basis to reduce the fee award are all off the mark.  The benefits provided through the Settlement are substantial, and they warrant the fee award requested by Class Counsel.  The requested fee falls well within the range of fees awarded in similar cases, comports with Third Circuit precedent, and is reasonable under both a percentage of the fund or lodestar-multiplier analysis. Accordingly, Plaintiffs and Class Counsel respectfully submit that the requested fee should be awarded in full.

### A.   The Requested Attorneys' Fees and Expenses Are Reasonable

Pursuant to the Settlement, Class Counsel are seeking fees and costs to be paid ***by Ferrero***, subject to the Court's approval, largely in addition to (and not out of) the monetary relief made available to the Class.  Ferrero does not oppose an attorneys' fee award of up to approximately $3,750,000[21] and reimbursement of expenses of $78,888 as requested by Class Counsel or the incentive awards of $2,000 for each of the Class Representatives.  Notably, only a small number of Settlement Class Members have objected to the fees and costs sought by Class

---

[21]   The figure is approximate because the Class Counsel is seeking 30% of the Gross Settlement Fund, which includes continually accruing interest on the settlement proceeds that Class Counsel has not calculated.  *See* Settlement, ¶21.Q.

Counsel, despite millions of consumers being informed of the Settlement through both the Court-approved notice and massive media coverage. To date, more than a *200,000 claim forms* have been submitted in connection with the proposed Settlement, *see* Supp. Young Aff., ¶10, while only seven unique objections have been filed. *See generally* ECF Nos. 72, 76-86. Similarly, only one state official and no federal official who received notice under 28 U.S.C §1715 has objected to Class Counsel's proposed application. *See generally* Cloudt Ltr.

As discussed in the Fee Application and this submission, Class Counsel's request for attorneys' fees is reasonable and supported by both the percentage of recovery approach and the lodestar method. Class Counsel are seeking $3 million for the creation of the significant non-pecuniary Injunctive Relief, which Plaintiffs' expert conservatively has valued at between $6.5 million to $41.7 million, and approximately $750,000 (30% of the Gross Settlement Fund) for the creation of a cash fund of $2.5 million. Thus, the total value of the Settlement is conservatively between $9 million and $44.2 million. Even if the Court accepts that the total benefit conferred on the Class by the Settlement is near the low end of the range established by Johnson – $10 million – the requested fee amounts to a modest 30% of the Injunctive Relief provided by the Settlement. As such, the requested fee is eminently reasonable under Third Circuit precedent. *In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294, 303 (3d Cir. 2005); *Hall*, 2010 WL 4053547, at *21 ("The

Court is aware that 33% is a standard figure for recovery in a consumer class action of the contingent-fee variety."); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085 (FSH), 2005 WL 3008808, at *15 (D.N.J. Nov. 9, 2005) (same). The requested fee is also appropriate under a lodestar cross-check. Under a lodestar approach, Class Counsel's fee would equate to a 2.09 multiplier on Class Counsel's combined lodestar of nearly $1,800,000, generated through nearly 3,000 hours of work on this case since its inception.[22] Again, the lodestar does not consider the work performed since preliminary approval was sought or the work that will need to be done if this Settlement is ultimately approved by the Court. Under either approach, Class Counsel's fee request is reasonable in light of the contingent nature of the case and the outstanding result Class Counsel achieved for the Class.

---

[22]   A small handful of Objectors also complain that Class Counsel submitted declarations submitting the lodestar of each firm, which was summarized in charts attached to each declaration, and did not provide detailed time records to the Class or this Court. Fee requests, however, are not be converted into full-blown trials, and courts in this Circuit have discretion to determine whether or not to review detailed time records where fees are based on a percentage of the recovery rather than a lodestar calculation. *Prudential*, 148 F.3d at 342 (upholding district court's discretion to not review time records even though objector claimed fee petition contained "'millions of dollars of overcharges and potential overcharges.'"). As there is no evidence that the time attributed to the case was not performed or that there were gross inefficiencies in litigating the action, the lodestar is presumptively reasonable given the amount of work performed and the results achieved.

1.     **Plaintiffs' Expert Properly Calculated a Range for the Value of the Injunctive Relief**

Objectors repeatedly try to minimize the value of the Injunctive Relief achieved for the Class by treating it as worthless.  In support, Objectors mischaracterize the Injunctive Relief provided by the Settlement, its value, or the host of cases that involved purely non-monetary settlements of litigation.  *See generally* ECF Nos. 77, 80-86.   Similarly, the Objectors also complain the attorneys' fee award is so large that it will result in a very minimal payment to the Class Members.  *See, e.g.,* Ades Obj. at 6.   Again, each presumes that the Injunctive Relief is valueless.  Thus, these objections are groundless, as they ignore the significance of the non-monetary relief.

With respect to the Injunctive Relief, a common benefit has been bestowed on the Class.  *See* Fee Application at 15-18.  Where this benefit is quantifiable, it is appropriate to award fees based on a percentage of the benefit conferred.  *See, e.g., McCoy*, 569 F. Supp. 2d at 478 (considering valuation range for injunctive relief obtained in awarding attorneys' fees).  The Objectors' attack on the Injunctive Relief and its value made clear the need for Plaintiffs' expert Larry Johnson to submit a report that focuses exclusively on the value of the Injunctive Relief.  As explained in more detail in Johnson's Report, the value of the Injunctive Relief boils down to a question of whether there is a value to a cessation of the allegedly

40

misleading advertising and the commencement of corrective advertising and monitoring of Ferrero's future advertising.  Johnson, after evaluating the increased sales of Nutella following the initiation of the allegedly misleading advertising, determined that the value of the Injunctive Relief ranges from $6.5 million to $41.7 million.  *See generally* Johnson Report.  Even if the Court were to apply a value of only $15 million, which is on the low end of the range set by Plaintiffs' expert, it would arrive at an attorneys' fee award far greater than the one that Class Counsel seek, easily in the range of $4.5 million, without giving any consideration to the monetary relief provided by the Settlement.  Thus, far from being worthless, the value of the Injunctive Relief is quantifiable and supports Class Counsel's requested fee award.

### 2. Class Counsel Seek an Award Based on 30% of All Relief Obtained for the Class

The principal thrust of the Objectors' arguments is that Class Counsel's requested attorneys' fees are excessive.  *See, e.g.,* Greenberg Obj.; Sibley Obj.; Sibley Form Obj.  For example, several of the Objectors complain that the attorneys' fee represents "more than 68% percent of the class settlement fund." *See, e.g.,* Bochenek Obj. at 1.  This is a red herring.  The flaw in the statement is that the Objectors' calculation is based on the amount of the $2.5 million monetary settlement fund (the only fund available to pay claims), and completely disregards

41

the fact that the non-monetary relief has value and that  Ferrero agreed to pay up to $3 million in fees in connection with the non-monetary relief.   In making this argument, the Objectors not only ignore that the attorney fee amount must be assessed against *both* the monetary and non-monetary benefits obtained for the Class, but they also attempt to alter the terms of the Settlement.   When assessed properly, the requested attorneys' fee is eminently reasonable as it represents only 30% of the benefit obtained by the Class, accepting a value near the lowest end of the range established by Johnson.  *See generally Franklin Balance Sheet Inv. Fund v. Crowley*, 2007 WL 2495018, at *6 (Del. Ch. Aug. 30, 2007).  Indeed, were the Court to accept the highest valuation of $44.2 million, Class Counsel's requested attorneys' fees amount to only 8.5% of the benefit conferred on the Class.

a.    **A Fee Should Be Awarded For The Non-Monetary Benefits Conferred On The Class**

Relevant law clearly establishes that the percentage of recovery theory is appropriate even in instances where non-monetary benefits are achieved, so long as those benefits are quantifiable.  *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 590 (D.N.J 2010), *rev'd on other grounds and remanded sub nom. Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012); *see also Sullivan v. DB Investments, Inc.*, No. 04-2819 (SRC), 2008 WL 8747721, at *28-29 (D.N.J.

42

May 22, 2008); *Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 175-76 (3d Cir.

2001); *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 169-70 (3d Cir. 1975).

In the present matter, the Class will receive a substantial monetary fund under the settlement of $2.5 million.  Class Counsel seeks a fee award representing 30% of the monetary fund *plus* 30% of the value of Injunctive Relief if the Court accepts that the Injunctive Relief has a value of $12.5 million, which is on the lower end of the range found by Plaintiffs' expert.[23]  Class Counsel respectfully submit that when the Court also takes into consideration the substantial and significant Injunctive Relief that will be entered under the Settlement the fee award sought is appropriate under Third Circuit precedent and proportionate to the benefits that the Class receives.

### b.    <u>The Objectors Cannot Re-Write the Settlement</u>

Some Objectors mischaracterize the Settlement as a cash "package deal" of $5.5 million in an attempt to undermine the benefits obtained for the Class and to convince this Court to reject the requested fee.  *See, e.g.,* Bochenek Obj. at 1.  The Objectors suggest the Court should simply divert the $3 million Class Counsel request in attorneys' fees in connection with the Injunctive Relief obtained (which Ferrero has agreed not to oppose) into the cash settlement fund to create a total

---

[23]    The Attorneys' Fee Requested would be appropriate even if the Court were to find that the value of the Injunctive Relief was $10 million.

43

common fund of $5.5 million out of which attorneys' fees should be awarded. However, Ferrero's agreement not to oppose an application of attorneys' fees not to exceed $3,750,000, obviously subject to the Court's approval, is not nearly the same as agreeing to create a common fund of $5.5 million. There is no legal authority to support the proposition that the Court has the authority to re-write the terms of a Settlement to divert the "up to" $3 million Ferrero has agreed to pay Class Counsel to create a larger common fund. Indeed, under the Rules Enabling Act and Federal Rules of Civil Procedure, there are "foundational limitations on a district court's discretion as it administers a class-action settlement." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011); *see also Sullivan*, 667 F.3d at 312. Indeed, the Court is required to take a "narrow construction of Rule 23." *Klier*, 658 F.3d at 474. The Objectors here ask this Court to do precisely what the Fifth Circuit found to be error in *Klier*: ignore the Settlement and re-allocate Ferrero's funds. *Id.* at 478. The Court should decline this invitation. *See Evans v. Jeff D.*, 475 U.S. 717, 726 (1986) (Stevens, J.) ("the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties."); *In re Diet Drugs Products Liab. Litig.*, 553 F. Supp.

44

2d at 490 ("When passing upon a proposed settlement agreement of a class action this court either has to accept the settlement agreement or reject it. We have no power to modify any terms and force acceptance on the parties to the agreement."). The Objectors' attempts to re-write the Settlement must be rejected.

> ### c.    Under the Lodestar Method, the Fee Requested Is Reasonable

As previously discussed, the key driver for this request is the benefit conferred upon the Class and the percentage-of-recovery doctrine – not the number of hours worked or the rates charged.  Indeed, a lodestar analysis is merely used under such circumstances to determine whether requested fees under the percentage-of-recovery method are reasonable.  *See Dewey*, 728 F. Supp. 2d at 606; *AT & T*, 455 F.3d at 164.  As previously stated under a lodestar approach, Class counsel's fee would equate to a 2.09 multiplier.

Class Counsel prosecuted this action in an efficient manner.  From the outset of this litigation, Plaintiffs' and Class Counsel's fundamental goal was to mitigate, if not eliminate, the allegedly improper advertising of Ferrero, while providing meaningful monetary relief for the Class.  Class Counsel succeeded on both fronts and did so through diligent and effective prosecution of this action, which included ensuring that the various plaintiffs' firms before this Court contributed meaningful work without duplication of efforts, while engaged in substantive negotiations.

45

The Objectors' criticism of the attorney hours spent prosecuting this action and settling this case is unfounded.  *See, e.g.,* Bochenek Obj. at 1-2.  Indeed, Plaintiffs and Class Counsel worked together proficiently and cooperatively to the benefit of all litigants, the Court, and the Class and resolved this litigation successfully in less than one year.  These efforts and the results achieved should be lauded, not lambasted, as Objectors seek to do here.  As set forth in the Fee Application, the average hourly rate was reasonable and the fee requested here is comparable to those awarded in other cases in this Circuit.  *See* Fee Application at 21-24.  When Class Counsel's efforts are properly viewed against the total benefit conferred and work performed over the past year, that Class Counsel are seeking a 2.09 multiplier on attorneys' fees that amount to no more than 30% of the benefit received by the Class underscores the reasonableness of the Fee Application. Accordingly, the Court should approve the attorneys' fee award.

### d.    A Percentage of the Gross Settlement Fund Is Appropriate

Finally, one objector contends that the attorneys' fee award should be based upon the net, rather than the gross, settlement fund.  Greenberg Obj. at 29-34. Courts, however, routinely award fees out of the gross settlement fund. *Mehling v. New York Life Ins. Co*., 248 F.R.D. 455, 468 (E.D. Pa. 2008); *In re Elec. Carbon Products Antitrust Litig*., 447 F. Supp. 2d 389, 411 (D.N.J. 2006); *In re ATI Techs.,*

46

*Inc. Sec. Litig.*, CIV.A. 01-2541, 2003 WL 1962400 (E.D. Pa. Apr. 28, 2003).  *Cf.*

*Lan v. Ludrof*, 1:06CV114, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008) (rejecting

objection (although based on different grounds) that attorneys' fees must be paid

out of net settlement fund).  Thus, this baseless objection should be overruled.

### B.   Approval of the Requested Fee Does Not Offend Third Circuit Precedent

One objector contends that because Ferrero has agreed – as a condition of

the parties' Settlement Agreement – to pay up to $3 million in connection with the

non-monetary relief obtained for the Class that Class Counsel should be deprived

of any payment for their creation of the $2.5 million monetary fund.  Bochenek

Obj. at 6-8.  This objection is as factually unfounded as it is fatally flawed in its

reasoning.  Distilled to its essence, the objector argues that Class Counsel, who

have obtained valuable relief for the Class, are not entitled to payment for all of

their work because there is no antagonism between the parties.  The objector's

reliance upon *Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000) and *U.S. ex rel.*

*Bogart v. King Pharmaceuticals*, 493 F.3d 323 (3d Cir. 2007) in reaching this

bizarre conclusion is severely misplaced.  Denial of a common fund fee in this

instance is not justified under either case.  Indeed, both cases actually ***support***

Class Counsel's requested fee and stand for the proposition that successful class

counsel should be compensated for the benefits that they obtain for a class.

47

First, *Brytus v. Spang & Co.* is easily distinguished from the instant matter. In *Brytus*, the plaintiffs brought an Employee Retirement Income Security Act ("ERISA") class action.  203 F.3d at 240.  The common fund created for the class was part of the recovery authorized by the ERISA statute, and the Court (while not precluding an award of a common fund fee in appropriate cases) held that the statute's provision for a fee calculated as a lodestar provided adequate statutory compensation on the facts presented in that case.  *Id.* at 241-43.

On the other hand and unlike *Brytus*, the Settlement here does not imply, much less state, that the "up to" $3 million that Ferrero has agreed to provide for the payment of attorneys' fees related to the Injunctive Relief is being paid pursuant to the NJCFA, or any other fee-shifting statute.  Because this is ***not*** a fee-shifting case, the common fund percentage of recovery analysis applies.

Further, even where an action is brought solely under a fee-shifting statute, "in cases where settlement has been reached prior to a finding of liability, courts have consistently treated the settlement as a common fund, concluding that where there has been a settlement, the basis for the statutory fee-shifting has been discharged and it is only the fund that remains."  *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 U.S. Dist. Lexis 29162, at *16-18 (E.D. Pa. Oct. 13, 2004) (citing *Brytus,* 208 F.3d at 246-47).

48

In *In re Automotive Refinishing*, the Eastern District of Pennsylvania awarded attorneys' fees based on the percentage of recovery method despite the fact that the antitrust class action was, "brought pursuant to a fee-shifting statute," because the settlement was "reached prior to a finding of liability." *Id*. The district court also recognized the more appropriate application of the percentage of recovery based on the contingent nature of the action, since "the percentage of recovery method is 'generally favored' in cases involving a common settlement fund." *Id*. at *8 (citing *Prudential*, 148 F.3d at 333). The same reasoning applies and the same result should follow here.

The conclusions of law in *U.S. ex rel. Bogart v. King Pharmaceuticals* also stand in stark contrast to the objector's assertions and in actuality provide further support for Class Counsel's application for an award of fees under a common fund analysis. In *Bogart*, the relator commenced *qui tam* litigation on behalf of the United States, District of Columbia, and ten states with *qui tam* legislation. 493 F.3d at 325. The defendants "ultimately settled the claims of the jurisdictions with *qui tam* statutes" and the relator was paid in excess of $9 million. *Id.* In addition, 100% of the relator's attorneys' fees and costs were paid by the defendant in accordance with the federal False Claims Act. *Id.* at 327 n.4. The relator, however, sought *additional* fees in an effort to be rewarded for providing information regarding the defendant to the non-*qui tam* states that were not

49

involved in the relator's whistleblower action. *Id.* at 326-328. The relator asserted that the non-*qui tam* states were unjustly enriched by his efforts and were essentially "free riding." *See id.* The Third Circuit found there was no such inequity to the relator because his attorneys' fees and expenses were paid in full by the defendants, that the common fund doctrine has never been applied to a *qui tam* action, that his lawsuit did not result in the creation of a common fund, and that there was no justification for an application against a common fund to reward him with a windfall payment of additional costs of the lawsuit and attorneys' fees, which had already been paid in accordance with the federal False Claims Act. *Id.* at 329-331.

The Third Circuit, however, also recognized in *Bogart* that the common fund doctrine is intended to spread the cost of paying attorneys' fees "'proportionately among those benefited by the suit.'" *Id.* at 329 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The Supreme Court's use of the word "proportionately" in *Boeing* makes clear that those who benefit more substantially from the work of class counsel should pay more in attorneys' fees than those who benefit less substantially. Indeed, in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), the Supreme Court explained that under the "common fund" doctrine, attorneys' fees must "be shifted with some exactitude to those benefiting." *Id.* at 264 n.39. After examining the Supreme Court's rulings in

50

*Boeing* and *Alyeska* at length, the Tenth Circuit held in *Aguinaga v. United Food and Commercial Workers Intern. Union*, 993 F.2d 1480 (10th Cir. 1993), that "in order for the common benefit exception to meet *Alyeska*'s requirement of fee shifting with exactitude, the plaintiff and the benefiting group members must bear fees in proportion to benefits received." *Id.* at 1484.

Under the common fund doctrine, attorneys' fees are appropriately paid from a common fund when the litigation confers "'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998). The Supreme Court consistently has recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478. The doctrine reflects the traditional practice in equity, and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id; Brytus¸* 203 F.3d at 242. The Third Circuit has noted that at the "heart of this [doctrine] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Polonski*, 137 F.3d at 145. Here, millions of consumers

51

will benefit from the non-monetary relief obtained while a robust, but relatively smaller group of several hundreds of thousands of consumers will benefit from the creation of the monetary fund.  Class Counsel should be compensated for the benefits they have provided to the entire Class.

### C.   Class Counsel's Request for Fees Comports with Rule 23(h)

The Bochenek Objectors' complaint that Class Counsel failed to comply with Rule 23(h) by not posting their Fee Application on the Settlement Administrator's website is without merit.   Bochenek Obj. at 2-6.   First, any objector represented by counsel likely had easy access to Class Counsel's Fee Application through PACER.   Any objector, whether *pro se* or represented, also simply could have contacted Class Counsel, like counsel for Ades did, and request a copy of the papers.  Secondly, and more fundamentally, the Bochenek Objectors rely on a tortured and erroneous reading of the Ninth Circuit's decision in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).  The Ninth Circuit did not hold that plaintiffs were required to publish their motion for attorneys' fees on a website.  Rather, the court held that the district court erred under Rule 23(h) by requiring class members to object to plaintiffs' counsel's request for fees prior to their filing of plaintiffs' motion.  *Id*. at 995.  Specifically, the Ninth Circuit noted that it was common practice in district courts within the Circuit to require the filing of objections prior to before the filing of any fee

52

motion.  *Id*. at 993.  The Ninth Circuit, in finding the failure to file the motion for

fees prior to the objection deadline, noted:

> [A] schedule that requires objections to be filed before the fee motion
> itself is filed denies the class the full and fair opportunity to examine
> and oppose the motion that Rule 23(h) contemplates.

*Id*. at 995.  Thus, the Ninth Circuit did not require the motion for fees to be posted

on a website, it simply required that it be ***filed*** prior to the time for class members

to object.  Finally, in *Dewey*, 728 F. Supp. 2d at 580, the court rejected the same

objection made here, explaining:

> None of these concerns warrant rejection of the settlement. First, the
> settlement and notice explained how to object, opt out, and make a
> claim. … Second, the notice included a telephone number and the
> names of counsel to whom questions could be posed or from whom
> additional information could be secured. Thus, the absence of a direct
> link to a brief does not mean the class lacked access to the
> information.

Here, Class Counsel filed their fee request prior to the deadline for the class to

object.  Thus, there is no basis for this objection under Rule 23(h).

### D.    The Incentive Awards Should Be Approved

Andrews objects to receipt by the named Plaintiffs of a $2,000 incentive

award since he claim it is unclear what, if anything, they have done to benefit the

Class.  Andrews Obj. at 50, 60.  "Incentive awards are 'not uncommon in class

action litigation and particularly where ... a common fund has been created for the

benefit of the entire class.'"  *In re Lorazepam & Clorazepate Antitrust Litig*., 205

53

F.R.D. 369, 400 (D.D.C. 2002).   The named Plaintiffs to this action agreed to

pursue the claims at issue for the benefit of the entire Class.   Declaration of Greg

Davis in Support of Fee Application, ECF No. 69-4, at ¶4; Declaration of Scott

Bursor in Support of Fee Application, ECF No. 69-3 at ¶¶3-4.   Thus, the incentive

award is appropriate; the object should be overruled; and the Class Representatives

awarded $2,000 each.   *See Hall*, 2010 WL 4053547, at *13 (overruling objection to

incentive award and finding $2,000 incentive award "to be both fair and reasonable

under the circumstances").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter

an Order overruling all objections, certifying the Class for settlement purposes,

granting final approval to the Settlement as fair, reasonable, and adequate, and

awarding attorneys' fees, expenses and Plaintiffs' incentive awards.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff Kaczmarek and the Class


By:   /s/ James E. Cecchi
        JAMES E. CECCHI

Dated:        July 2, 2012

Joseph P. Guglielmo
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor

54

New York, NY 10110
(212) 223-6444

Christopher M. Burke
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
(619) 233-4565

*Counsel for Plaintiff Glover and Class Counsel*

*Additional Plaintiffs' Counsel*

Stephen A. Weiss
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, New Jersey 07102
(973) 639-9100

Scott A. Bursor
Joseph I. Marchese
BURSOR & FISHER, P.A.
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 989-9113

Greg L. Davis
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, Alabama 36117
(334) -832-9080