

# Expert Report of R. Larry Johnson

IN Re: NUTELLA MARKETING AND
SALES PRACTICES LITIGATION

In the United States District Court
District of New Jersey
Civil Action No. 03:11-cv-01086-FLW-DEA

*R Larry Johnson*

Prepared By:
R. Larry Johnson, CPA

June 28, 2012

**VERIS CONSULTING, LLC**
www.verisconsulting.com

11710 Plaza America Drive, Suite 300 I Reston, VA 20190 I MAIN 703.654.1400 I FAX 703.796.1200
4237 Salisbury Road, Bldg 1, Suite 100 I Jacksonville, FL 32216 I MAIN 877.473.3338 I FAX 904.281.0518

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FINDINGS ............................................................................................................................... 2

EXHIBIT A .............................................................................................................................. 8

CURRICULUM VITAE OF R. LARRY JOHNSON, CPA ................................................................ 9

DOCUMENTS CONSIDERED ................................................................................................... 14

## INTRODUCTION

I have been engaged by Plaintiffs' counsel in the action captioned In Re: Nutella Marketing and Sales Practices Litigation, D.N.J., No. 11-CV-01086. It is my understanding that Plaintiffs' counsel and Defendant Ferrero U.S.A., Inc. ("Defendant" or "Ferrero") have entered into a Settlement Agreement that provides for a Cash Settlement to Class members valued at $3,050,000.[1] Further, it is my understanding that the Settlement Agreement requires Ferrero to cease the asserted misleading or deceptive marketing campaign, to remove references to a nutritionist spokesperson used by Ferrero, and to make prospective changes to its marketing and labeling of its Nutella® nut spread ("Nutella"). Ferrero has agreed to modify the product label for Nutella, replace and not further air the television advertisements at issue in this lawsuit by approximately July 2012, and modify the content on the website for Nutella. Plaintiffs' counsel has asked me to estimate the value of the changes that Ferrero will make to their prospective advertising, marketing, and labeling of Nutella as required by the Settlement Agreement ("Injunctive Relief").

In the conduct of my engagement, I have been assisted by various members of the staff of Veris. Veris' staff has considered the documents listed on page 14. I have personally considered those documents specifically referenced in my report and work papers. The opinions expressed in this report are my own. Further, my opinions are expressed to a reasonable degree of certainty.

The results of my analysis and quantification of the Injunctive Relief are described in the Findings section of this report.

The compensation for our work is at rates which range from $250-$625 per hour depending on the personnel assigned to the engagement. Our compensation is in no way dependent on our findings or the ultimate outcome of the case.

I reserve the right to modify my conclusions upon a subsequent determination of the need for any such modifications.

---

[1] The Cash Settlement Amount is $2,500,000 for the Nationwide Class and $550,000 for the California Class. Class Action Settlement Agreement, In Re: Nutella Marketing and Sales Practices Litigation, D.N.J. Civil Action No. 3:11-cv-01086-FL-W-DEA, Exhibit C.

1

**FINDINGS**

Nutella is part of the food product line of Ferrero that also includes Tic Tac® breath mints and Ferrero Rocher® pralines. Nutella is part of the larger nut spread market that includes peanut butter, and is made from hazelnuts and cocoa, among other ingredients. Originally introduced in Europe in the 1940s, Nutella has begun to gain in distribution and awareness in the U.S.[2]

The following table summarizes by year the net sales of Nutella for the period July 2006 through February 2011:

| Year | Net Sales |
|---|---|
| 2006 (Jul-Dec) | $ ▮▮▮▮ |
| 2007 | ▮▮▮▮ |
| 2008 | ▮▮▮▮ |
| 2009 | ▮▮▮▮ |
| 2010 | ▮▮▮▮ |
| 2011 (Jan & Feb) | ▮▮▮▮ |
| | $ ▮▮▮▮ |

Actual sales data of Nutella provided by Ferrero shows two distinct trends in the net sales of this product, one before the marketing campaign that began in August 2009, and a much higher sales trend as a result of the marketing campaign. The following table presents the monthly sales data of Nutella for the 12 months prior to the marketing campaign and the 12 months after the marketing campaign:

---

[2] http://www.ferrerousa.com, http://www.nutellausa.com

**Nutella Monthly Net Sales**

| Before | | | After | |
|---|---|---|---|---|
| Month | Net Sales | | Month | Net Sales |
| 9/30/2008 | $ ▇ | Initiation of Marketing Campaign - 08/09 | 9/30/2009 | $ ▇ |
| 10/31/2008 | ▇ | | 10/31/2009 | ▇ |
| 11/30/2008 | ▇ | | 11/30/2009 | ▇ |
| 12/31/2008 | ▇ | | 12/31/2009 | ▇ |
| 1/31/2009 | ▇ | | 1/31/2010 | ▇ |
| 2/28/2009 | ▇ | | 2/28/2010 | ▇ |
| 3/31/2009 | ▇ | | 3/31/2010 | ▇ |
| 4/30/2009 | ▇ | | 4/30/2010 | ▇ |
| 5/31/2009 | ▇ | | 5/31/2010 | ▇ |
| 6/30/2009 | ▇ | | 6/30/2010 | ▇ |
| 7/31/2009 | ▇ | | 7/31/2010 | ▇ |
| 8/31/2009 | ▇ | | 8/31/2010 | ▇ |
| | $ ▇ | | | $ ▇ |

| Year-over-year growth in sales | $ ▇ | ▇ |
|---|---|---|

Sales data provided by Ferrero for the much larger nut spread market, which includes Nutella, indicated that sales were largely flat over the period 2008-2010. The industry metrics I reviewed included unit sales per buyer, dollar sales per buyer, percentage of households buying, and raw buyers.[3] This data showed less than a ▇% year-over-year change for the 2008-2010 time period, with certain metrics showing mild increases and others showing mild decreases. I have seen no evidence that the significant sales increases of Nutella that were experienced contemporaneous with Ferrero's marketing campaign were in any respect materially affected by other external market forces impacting the broader nut spread market.

I utilized Ferrero's actual sales data for the period July 2006 through February 2011 to calculate by linear regression Ferrero's Nutella sales trend lines before and after the marketing campaign. Ferrero's Historic Net Sales Trendline prior to the marketing campaign is derived from actual net sales data from July 2006 to August 2009, the month that the marketing

---

[3] FERRERO000015 – FERRERO000018 and FERRERO000021 – FERRERO000025

campaign was launched. The Post-Marketing Campaign Net Sales Trendline is derived from data for the entire period July 2006 to February 2011.[4]

The following chart illustrates the impact of Ferrero's marketing campaign on the net sales trend line of Nutella.



This data clearly evidences that the marketing campaign that was initiated in August 2009 substantially increased Ferrero's monthly sales of Nutella as well as their overall net sales growth rate.

---

[4] In the interest of conservatism, the calculation of the post-marketing campaign net sales trend line is based on data for the entire period for which monthly sales data was available, rather than simply the period after the marketing campaign began. The limited amount of data available for the period after the marketing campaign (i.e., August 2009 to February 2011) would have had an exaggerated effect on any regression calculated trend line.

*Quantification of the Value of Injunctive Relief*

I have projected future sales volumes beginning from February 2011[5] assuming the following two sales trends scenarios:

- Sales based on post-marketing campaign growth trend
- Sales based on historic growth trend prior to marketing campaign

In accordance with the Settlement, Ferrero has agreed to the Injunctive Relief for a period of three years for the corrective advertising campaign and two years for the revised labeling.[6] Thus, I have calculated that the benefit of the Injunctive Relief begins after July 2012, when television advertisements at issue in this lawsuit are expected to be replaced in accordance with the Settlement Agreement. Below are the projected sales figures[7] under each scenario, and the difference between those sales figures.

|  | Annual Net Sales | | |
| --- | --- | --- | --- |
| Year | Reflective of Marketing Campaign | Reflective of Historic Net Sales Trend | Difference in Net Sales |
| 2012/2013 | $ ■ | $ ■ | $ ■ |
| 2013/2014 | ■ | ■ | ■ |
| 2014/2015 | ■ | ■ | ■ |
|  | $ ■ | $ ■ | $ ■ |
| Average Annual Growth Rate | ■% | ■% |  |

The manner in which these sales projections have been done is pictorially reflected in Exhibit A.

I have considered alternative differential rates of growth to measure the potential circumstances in which the growth rate "Reflective of Marketing Campaign" would have been greater than the historical rate of growth even without the deceptive marketing practices.

---

[5] February 2011 was the most recent net sales data produced as part of litigation. Consequently, projections herein are based on the data produced by Ferrero, (July 2006 - February 2011,) to July 2012, the beginning of the benefit resulting from the Injunctive Relief.
[6] Class Action Settlement Agreement, In Re: Nutella Marketing and Sales Practices Litigation, D.N.J. Civil Action No. 3:11-cv-01086-FL-W-DEA, Sections 40.A.2 and 41.F.
[7] Years run 8/1 to 7/31 (e.g., 2012/2013 is 8/1/12 – 7/31/13).

5

The result of the varying alternative estimates of the benefit of Injunctive Relief are as follows:



|  | Average Annual Growth Rate | Difference in Net Sales |
|---|---|---|
| Based upon historical experience: | ▇% | $▇ |
| Assumed Alternative Growth Rates: | ▇% | ▇ |
|  | ▇% | ▇ |
|  | ▇% | ▇ |
|  | ▇% | ▇ |

This chart illustrates that even assuming only ▇% of the annual growth rate is attributable to the deceptive marketing, (from ▇% with the deceptive marketing campaign to ▇% without it,) $▇ of future sales will not occur over the next three years because of the Injunctive Relief set forth in the Settlement.

The above differences are measured in nominal dollars. To bring this projection of future nominal dollar sales to present value, the differences in net sales figures need to be discounted to reflect the time value of money as well as the uncertainty of the future sales projections.[8] Given the current historically low risk free rate, the vast majority of the 20% annual discount rate that we have applied is to adjust for the uncertainty in projecting Nutella's sales.



|  | Average Growth Rate | | | | |
|---|---|---|---|---|---|
| Years | ▇% | ▇% | ▇% | ▇% | ▇% |
| 2012/2013 | $▇ | $▇ | $▇ | $▇ | $▇ |
| 2013/2014 | ▇ | ▇ | ▇ | ▇ | ▇ |
| 2014/2015 | ▇ | ▇ | ▇ | ▇ | ▇ |
| Difference in Net Sales | ▇ | ▇ | ▇ | ▇ | ▇ |
| Present Value Discounted at an Annual Rate of 20% | $ 41,681,876 | $ 34,434,383 | $ 24,668,272 | $ 14,570,867 | $ 6,509,309 |

---

[8] Amounts are presented as yearly totals, but cash flows take place throughout the year. To more closely approximate true present value of the cash flows, present value has been calculated using the mid-year convention, which assumes all cash flows occur in the middle of the year.

This table reflects that the present value of the amount of sales that would not occur as a result of the Injunctive Relief discounted at an annual rate of 20% ranges from $41.7 million, if all of the sales growth was attributable to the asserted deceptive marketing practices, down to $6.5 million, if only ■% of the growth rate increase was attributable to the asserted deceptive practices.

It is my opinion that the range of $6.5 million to $41.7 million is a reasonable and conservative estimate of the Injunctive Relief conveyed as a consequence of the Settlement.

**EXHIBIT A**

Net sales were projected both with and without the effect of the August 2009 marketing campaign.



The Adjusted Projected Net Sales Trendline begins after July 2012, when television advertisements at issue in this lawsuit are expected to be replaced per the Settlement Agreement, and continues the historic net sales trend Nutella experienced prior to the marketing campaign.



# R. LARRY JOHNSON, CPA

EXPERIENCE

| | |
|---|---|
| **VERIS CONSULTING, INC.** | **2000 - Present** |
| CHAIRMAN / CEO | |
| **JOHNSON LAMBERT & CO.** | **2006 - Present** |
| PARTNER EMERITUS | |
| **JOHNSON LAMBERT & CO.** | **1986 - 2005** |
| MANAGING PARTNER | |

Direct client responsibility for all litigation consulting services. Experience includes forensic analysis; liability, causation and damages consultation; discovery assistance; preparation of damages analysis and expert testimony. Engagements have included many which required several thousands of hours of assistance and involved damages in the hundreds of millions of dollars.

Specialized industries involved in litigation assignments have included insurance, nuclear power, finance, software development, telecommunications, real estate, government contractors, professional service firms and hotels.

As managing partner of Johnson Lambert & Co., oversaw the accounting and auditing practice of that firm; as CEO of Veris Consulting, Inc., oversees all consulting services that firm provides, including survey research and technology consulting.

For 18 years through 1986 associated with Ernst & Whinney. Admitted to partnership in 1978, named partner in charge of accounting and auditing for its Washington, D.C. practice in 1980 and served as Mid-Atlantic Regional Director of insurance services.

| | |
|---|---|
| **AICPA FINANCIAL SERVICES EXPERTS PANEL** | **2000 - 2001** |
| MEMBER | |

One of 15 original members of panel designed to monitor developments affecting the delivery and reporting of financial services in the U.S.

| | |
|---|---|
| **AICPA INSURANCE COMPANIES COMMITTEE** | **1997 - 1999** |
| MEMBER | **1989 - 199**3 |

One of 15 members responsible for development of accounting and financial reporting for U.S. insurance enterprises.

| | |
|---|---|
| **ACCOUNTING STANDARDS EXECUTIVE COMMITTEE (Now FINANCIAL REPORTING EXECUTIVE COMMITTEE)** | **1994 - 1997** |
| MEMBER | |

One of 15 members of the Accounting Standards Executive Committee of the American Institute of Certified Public Accountants, which was the highest authority in the U.S. Accounting Profession with responsibility for industry-specific accounting and reporting matters.

## OTHER AICPA COMMITTEES

Served as a member of the AICPA Committee on Relations with Actuaries and on task forces including the following:
- Auditing Loss Reserves
- Mutual Life Insurance Companies
- Deposit Accounting (Chair)
- Mass Tort Liabilities

## EDUCATION

BS – University of Maryland, *magna cum laude*
Completed MBA course work, George Washington University

TRIAL AND ARBITRATION TESTIMONY

- *Connecticut Yankee Atomic Power Company, Yankee Atomic Electric Company, Maine Yankee Atomic Power Company v. United States of America,* (Fed Cl., Nos. 07-875C, 07-876C, 07) (October 2011)

- *Monsanto Co. and Monsanto Technology LLC v. E.I. DuPont de Nemours and Company and Pioneer Hi-Bred Int'l. Inc.,* (AAA No. 13-122-0126-09) (July 2011)

- *Fuller-Austin Asbestos Settlement Trust, et al. v. Zurich-American Insurance Company, et al and related cases*, Superior Court of the State of California, County of San Francisco, Nos. CGC 04-431719, CGC 04-436181, CGC 05-442140, CGC-442745) (June 2011)

- *Ferguson, et al. v. Hannover Rückversicherungs-Aktiengesellsschaft* (N.Y. Sup. Ct., No. 500106/2008) (March 2011)

- *In the Matter of Joseph P. Welter, CPA and Keith D. Majors, CPA,* (PCAOB No. 105-2010-001) (December 2010)

- *Kansas Gas & Electric Co., Kansas City Power & Light Co., Kansas Electric Power Cooperative, Inc. v. The United States* (Fed Cl., No. 04-99C) (June 2010)

- *Motorola, Inc. v. Nokia Corporation,* International Chamber of Commerce, International Court of Arbitration, Case No. 16 203 / VRO (April 2010)

- *In the Matter of the Arbitration Between Manufacturers Property & Casualty Limited & Montpelier Reinsurance Limited* (February 2010)

- *State Farm Mutual Automobile Company & Subsidiaries, Petitioner v. Commissioner of Internal Revenue, Respondent,* United States Tax Court Docket No. 5426-05 (December 2009)

- *Playa Manzana B.V. v. Cancun Ben, LLC, Cancun Tenant S. de R.L. de C.V.*, Arbitration Case No. 15922/JRF (November 2009)

- *Adelphia Communications Corporation v. Motorola, Inc. et al.* ( Bankr., S.D.N.Y.,02-41729(REG)) (October 2009)

- *Pacific Gas & Electric Company v. United States* (Fed. Cl., No. 04-0074C; 04-0075C) (October 2009)

- *In the matter of arbitration between OX, LLC and ADESA Virginia, LLC* (September 2009)

- *Yankee Atomic Electric Company v. United States (Fed. Cl., No. 98-126C)* (August 2009)

- *In the Matter of the Arbitration between Virginia Surety Company, Inc. and The Warranty Group and Certain Underwriters at Lloyd's of London, et al.* (June 2009)

- *Washington Investment Partners, LLC v. Ayman Abdulla Boodai, Fahed F. Boodai, The Securities House WLL, TBC Funding Corp., Transpoint Building Company, and Arch Street Capital Advisors, LLC. And John Doe Defendants 1-100* ( Superior Court for the District of Columbia, 2007 CA 000693 B) (May 2009)

- *Southern California Edison Company v. The United States* (Fed. Cl., No. 04-0109C) (April 2009)

- *Energy Northwest v. The United States* (Fed. Cl. No. 04-0010C) (February 2009)

- *Arizona Public Service Company v. The United States* (Fed Cl., No. 03-2832C) (February 2009)

- *In the Matter of Arbitration Between Triad Guaranty Insurance Corporation and Assured Guaranty Mortgage Insurance Company* (January 2009)

- *Securities and Exchange Commission v. James N. Stanard, Martin J. Merritt and Michael W. Cash,* (S.D.N.Y., No. 06 civ. 7736) (September 2008)

- *Dairyland Power Cooperative v. United States* (Fed. Cl., No. 04-106C) (July 2008)

---

DEPOSITION TESTIMONY

---

- *The Rector and Visitors of the University of Virginia v. IDX Systems Corporation, et al.* In the Circuit Court for the City of Charlottesville. Civil Case No.: CL09-58 *and IDX Systems Corporation, et al. v. Marshall Ruffin*, In the Circuit Court for the City of Charlottesville, Civil case No.: CL10-398 (March 2012)

- *Alabama Power Company, Georgia Power Company and Southern Nuclear Operating Company, Inc. v. United States* (Fed. Cl. No. 08-237C) (January 2012)

- *Pacific Gas & Electric Company v. United States* (Fed. Cl. No. 10-507C, into which has been consolidated No. 10-508C) (November 2011)

- *Miguel V. Pro and Davis Landscape, Ltd. v. Hertz Equipment Rental Corporation* (D.N.J., No. 2:06-CV-03830) (October 2011)

- *Jean Smith and Loria Ivie, Individually and on behalf of All Others Similarly Situated v. Barry Collinsworth, Thomas Pugh, United American Insurance Company, Heartland Alliance of America Association, Farm & Ranch Healthcare, Inc.; and John Does* 1020 (Circuit Court of Saline County, Arkansas, No CV 2004-742-2) (July 2011)

- *Connecticut Yankee Atomic Power Company, Yankee Atomic Electric Company, Maine Yankee Atomic Power Company v. United States* (Fed. Cl., Nos. 07-875C, 07-876C, 07-877C) (July 2011)

- *Fairfax Financial Holdings, Ltd., et ano. v. S.A.C. Capital Management, LLC, et al.* (Superior Court of the State of New Jersey, Docket No. MRS-L-2032-06) (July 2011)

- *Monsanto Co. and Monsanto Technology LLC v. E.I. DuPont de Nemours and Company and Pioneer Hi-Bred Int'l. Inc*. (AAA No. 13-122-0126-09) (June 2011)

- *A.P.I., Inc. Asbestos Settlement Trust and A.P.I., Inc. v. Home Insurance Company et al.,* (D. Minn., No. 09-CV-00975) (April 2011)

- *The Rector and Visitors of the University of Virginia v. IDX Systems Corporation, et al*. (In the Circuit Court for the City of Charlottesville, Civil Case No.: CL09-58) (February 2011)

- *United States Securities and Exchange Commission v. Escala Group, Inc. Gregory Manning, Larry Lee Crawford, CPA, et al.* (D.D.C., No. 09 civ. 2646) (January 2011)

- *Northern States Power Company v. The United States* (Fed. Cl., No. 07-608C) (October 2010)

- *Fuller-Austin Asbestos Settlement Trust, et al. v. Zurich-American Insurance Company, et al and related cases*, Superior Court of the State of California, County of San Francisco, Nos. CGC 04-431719, CGC 04-436181, CGC 05-442140, CGC-442745) (September 2010)

- *Ferguson, et al. v. Hannover Rückversicherungs-Aktiengesellsschaft* (N.Y. Sup. Ct., No. 500106/2008) (July 2010)

- *Kansas Gas & Electric Co., Kansas City Power & Light Co., Kansas Electric Power Cooperative, Inc. v. The United States* (Fed Cl. No. 04-99C) (April 2010 and January 2010)

- *Consumers Energy v. The United States* (Fed Cl. No. 02-1894-C) (March 2009 and February 2010)

- *RSC Tower I, LLC et al. v. Camalier Limited Partnership, et al.* (Case No. 276438-V)*; RSC Tower I, LLC, et al. v. CR-RSC Tower I, LLC, et al.,* (Case No. 309540) (Montgomery Co. Md.)  (January 2010)

- *Yankee Atomic Electric Company v. United States* (Fed. Cl., No. 98-126C) (July 2009)

- *Pacific Gas & Electric Company v. United States* (Fed. Cl., No. 04-0074C; 04-0075C) (July 2009)

- *In the matter of arbitration between OX, LLC and ADESA Virginia, LLC* (July 2009)

12

- *Adelphia Communications Corporation v. Motorola, Inc. et al.* (Bankr., S.D.N.Y., No. 02-41729 (REG)) (March 2009)

- *Arizona Public Service Company v. The United States* (Fed Cl., No. 03-2832C) (December 2008)

- *Energy Northwest v. The United States* (Fed. Cl., No. 04-0010C) (October 2008 and February 2008)

- *GE Funding Holdings, Inc. v. FGIC Corporation* (Del. Cha., No. 4012) (September 2008)

- *Southern California Edison Company v. The United States* (Fed. Cl., No. 04-0109C) (February 2009 and July 2008)

## SPEECHES

- The Effective Use of Financial Experts in Business Litigation
  DRI Commercial and Intellectual Property Litigation Symposium – Litigating the Financial Meltdown and Protecting Your Intellectual Property (April 2009)

- The Death of Deepening Insolvency?
  International Association of Insurance Receivers 2009 Post Inaugural Insolvency Conference (January 2009)

- Subprime Lending Issues of Valuation
  Law Seminars International Subprime Lending Crisis Conference (March 2008)

- Evolving Theories of Liabilities and Damages Against Third Parties –
  International Association of Insurance Receivers 2005 Insolvency Workshop (February 2005)

## DOCUMENTS CONSIDERED

**Legal Documents:**
Class Action Complaint (02/27/11)
Class Action Settlement Agreement (01/10/12)

**Documents Produced:**
Ferrero USA – Commercial Division Daily Sales Reports for month-end dates for the period July 2006 through February 2011, found at: eFERRERO014285, eFERRERO014148, eFERRERO013804, eFERRERO013594, eFERRERO015827, eFERRERO015671, eFERRERO015570, eFERRERO015459, eFERRERO015324, eFERRERO015214, eFERRERO016057, eFERRERO016228, eFERRERO016330, eFERRERO016516, eFERRERO016673, eFERRERO016898, eFERRERO017086, eFERRERO017203, eFERRERO017346, eFERRERO017618, eFERRERO017827, eFERRERO017984, eFERRERO018126, eFERRERO018267, eFERRERO018450, eFERRERO018725, eFERRERO018904, eFERRERO019119, eFERRERO019370, eFERRERO019738, eFERRERO019854, eFERRERO019970, eFERRERO020171, eFERRERO020564, eFERRERO020724, eFERRERO020822, eFERRERO020927, eFERRERO021029, eFERRERO021136, eFERRERO021253, eFERRERO021381, eFERRERO021490, eFERRERO021607, eFERRERO021700, eFERRERO021804, eFERRERO021903, eFERRERO022053, eFERRERO022167, eFERRERO022294, eFERRERO022408, eFERRERO022619
eFERRERO000160- eFERRERO000161
eFERRERO000712- eFERRERO000726
eFERRERO005226- eFERRERO005236
eFERRERO013515- eFERRERO013517
eFERRERO020576- eFERRERO020586
eFERRERO029035- eFERRERO029036
eFERRERO029059
eFERRERO030207- eFERRERO030212
eFERRERO030619- eFERRERO030628
eFERRERO030683- eFERRERO030689
eFERRERO030714- eFERRERO030745
FERRERO000015-FERRERO000018
FERRERO000021-FERRERO000028
FERRERO000042
FERRERO001131-FERRERO001132
FERRERO001271-FERRERO001276
MP000048-MP000166
MP000607-MP000638
MP000644-MP000680
MP001381-MP001390
MP001415-MP001427
MP001439-MP001519
MP001522-MP001523
MP001755-MP001817

## DOCUMENTS CONSIDERED

MP001819-MP001908
MP001944
MP002029-MP002083
MSL0000001-MSL0000032
MSL0000684-MSL0000724
MSL0000726-MSL0000750
MSL0000942-MSL0000946
MSL0001491-MSL0001547